Certiorari Denied, May 18, 2010, No. 32,290

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-044

Filing Date: February 23, 2010

Docket No. 28,312

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

ALBERT MORENO,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Ross C. Sanchez, District Judge

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**CASTILLO, Judge.**

**{1}** Albert Moreno (Defendant) appeals the denial of two motions, the first for dismissal based on a violation of his Sixth Amendment right to a speedy trial and the second for exclusion of certain witnesses. We hold that Defendant's right to a speedy trial was violated, and therefore we reverse Defendant's convictions. Accordingly, we need not reach

1

Defendant's second claim of error regarding the exclusion of witnesses.

## I. BACKGROUND

**{2}** Based on allegations of sexual contact with minors, Defendant was arrested and incarcerated on November 30, 2005. On December 15, 2005, he was indicted on multiple counts of criminal sexual penetration in the first degree, multiple counts of criminal sexual contact of a minor in the second and third degree, and other related counts. Defendant's arraignment followed on December 23, 2005, at which time the public defender was appointed to represent him.

**{3}** During all of 2006 and for the first part of 2007, witness interviews were scheduled, cancelled, and rescheduled; during this same period of time, trial dates were scheduled, continued, and rescheduled numerous times. The details regarding the interviews and continuances will be developed in the context of the issues discussed. On July 13, 2007, nineteen months after his arrest, Defendant submitted a pro se motion to dismiss for violation of his right to a speedy trial. Roughly a week later, he filed a motion to exclude witnesses. The district court denied both motions based primarily on its finding that Defendant had stipulated to nearly all of the trial continuances and Rule 5-604 NMRA extension petitions.

**{4}** At his last scheduled trial date on September 24, 2007, Defendant pled no contest to two counts of criminal sexual penetration of a minor, one count of criminal sexual contact of a minor, and one count of bribery of a witness. Having reserved his right to appeal the denial of his motion to dismiss on speedy trial grounds as well as his motion to exclude witnesses, Defendant now appeals the denial of both motions.

## II. DISCUSSION

### A. Speedy Trial

**{5}** "The right to a speedy trial is a fundamental right of the accused." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. The Sixth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

*Id.* ¶ 10 (quoting U.S. Const. amend. VI). "Violation of the speedy trial right is only

determined through a review of the circumstances of a case, which may not be divorced from a consideration of the State and the defendant's conduct and the harm to the defendant from the delay." *Id.* ¶ 13. "Accordingly, we have adopted the balancing test created by the United States Supreme Court in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)]." *Garza*, 2009-NMSC-038, ¶ 13.

> In *Barker*, the United States Supreme Court created a balancing test, in which the conduct of both the prosecution and the defendant are weighed. The Court identified four factors: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated.

*Id.* (internal quotation marks and citation omitted). "These four factors are interrelated and must be evaluated in light of other relevant circumstances in the particular case. No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *State v. Johnson*, 2007-NMCA-107, ¶ 5, 142 N.M. 377, 165 P.3d 1153 (internal quotation marks and citation omitted).

**{6}** The *Barker* "formulation necessarily compels courts to approach speedy trial cases on an ad hoc basis" and requires them to reject "inflexible, bright-line approaches to analyzing a speedy trial claim." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). "On appeal, we give deference to the factual findings of the district court; nevertheless, we are required to independently evaluate the four *Barker* factors to ensure that the constitutional right has not been violated." *Johnson*, 2007-NMCA-107, ¶ 5.

## B.     *Barker* Factors

### 1.     Length of delay

**{7}** Appellate courts consider the length of delay for two reasons: (1) as "a threshold inquiry that triggers the rest of the analysis" and (2) "as part of the balancing test itself." *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885. In this case, the State concedes that the delay was "presumptively prejudicial" and that consideration of the *Barker* factors is appropriate. Thus, we continue our inquiry.

**{8}** "If a court determines that the length of delay is presumptively prejudicial, then it should consider the length of delay as one of four factors in the analysis, none of which alone are sufficient to find a violation of the right." *Garza*, 2009-NMSC-038, ¶ 23 (internal quotation marks and citation omitted). In its order, the district court failed to address how the length of delay in this matter should be weighed, nor did the State address this factor in its answer brief. To properly evaluate this factor, we must calculate the length of delay. *See id.* ¶ 24 ("[c]onsidering the length of delay as one of the four *Barker* factors, the greater the delay the more heavily it will potentially weigh against the [s]tate").

**{9}** Defendant argues that his speedy trial right attached on arrest, while the State would

3

have the time period commence on the date of arraignment. The district court's order is unclear. In one part of the order, the date is found to be December 23, 2005, the date of arraignment, but later in the same paragraph the district court calculates the range of delay beginning with the date of arrest on November 30, 2005, and ending with the date of the last scheduled trial, September 24, 2007. On the first page of the order, the district court calculates twenty-two months of delay, but later in the order, the district court calculates the time to be twenty-one months.

**{10}** We agree with Defendant. "In general, the right [to a speedy trial] attaches when the defendant becomes an accused, that is, by a filing of a formal indictment or information *or arrest and holding to answer*." *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (emphasis added) (internal quotation marks and citation omitted). In this case, Defendant became an accused when he was arrested. The arrest was based on the same allegations of sexual misconduct on which he was ultimately charged, indicted, and arraigned. Defendant's freedom was restrained in that he remained incarcerated on these charges from the date of his arrest to the date of his plea. *See State v. Marquez*, 2001-NMCA-062, ¶ 11, 130 N.M. 651, 29 P.3d 1052 (calculating the time period for speedy trial analysis from the date of the initial arrest to the date of the plea because throughout this period criminal charges were pending and the defendant's freedom was restrained by conditions of release). The length of delay from the date of arrest to the date of the plea is approximately twenty-two months.

**{11}** We next consider the extent to which this delay stretched beyond the bare minimum required to trigger judicial examination of the claim. *See Doggett v. United States*, 505 U.S. 647, 652 (1992) ("If the accused [shows that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay], the court must then consider . . . the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."). The district court concluded that Defendant's case was relatively complex, and we agree. *See Johnson*, 2007-NMCA-107, ¶ 7 (observing that we give deference to a district court's determination of the complexity of a case as the district court is in the best position to make such a determination).

**{12}** Because Defendant's speedy trial motion was filed prior to August 13, 2007, we refer to the pre-*Garza* guidelines to identify the bare minimum delay required to trigger judicial scrutiny of a complex case. *Garza*, 2009-NMSC-038, ¶ 50 (holding that the new guidelines for determining the degree of delay which establishes presumptively prejudicial delay "apply only to speedy trial motions to dismiss initiated on or after August 13, 2007"). Under the pre-*Garza* guidelines, that bare minimum delay is fifteen months. *Id.* ¶ 41. The length of delay in this matter is roughly twenty-two months—seven months beyond the bare minimum. We hold that a seven-month delay beyond the bare minimum for a complex case weighs in favor of Defendant and against the State. *See State v. Plouse*, 2003-NMCA-048, ¶ 43, 133 N.M. 495, 64 P.3d 522 (holding that a total delay of twenty-one months in a complex case, six months beyond the bare minimum, weighed in the defendant's favor); *see also Johnson*, 2007-NMCA-107, ¶ 8 (holding that a total delay of twenty-six months in a complicated case, eleven months over the bare minimum, weighed against the state).

4

## 2. Reasons for the delay

**{13}** The district court divided the delay in this matter into two segments: (1) the five-month period between December 23, 2005, the date Defendant was arraigned, and May 15, 2006, the date counsel for Defendant was substituted; and (2) the sixteen-month period between May 15, 2006 and September 24, 2007, Defendant's last scheduled trial date. The district court found that the first period of delay was attributable equally to both parties. Defendant argues that this time should be held against the State because it did not provide timely and complete witness lists. While this may be true, there is nothing to show that this detrimentally affected the progress of the case at this preliminary point. During this period, original counsel for Defendant withdrew and new counsel was appointed. The first request for pretrial interviews was not made until June. Based on these facts, we agree with the district court's evaluation, but calculate the time from the date of arrest on November 30. During this period, it appears that the case proceeded with customary promptness and delay cannot be held against either party. *State v. Lopez*, 2009-NMCA-127, ¶ 24, 147 N.M. 364, 223 P.3d 361 (holding that the five-month period during which the case proceeds with customary promptness will be held against neither party), *cert. denied*, 2009-NMCERT-010, ___ N.M. ___, 224 P.3d 1257.

**{14}** The district court weighed the remaining delay against Defendant and then determined that because the majority of the delay occurred during the second period of time, overall, the reasons for the delay weighed against Defendant and in favor of the State. Although Defendant argued that the delay was caused solely by the State's inability to schedule witness interviews, the district court rejected this contention and concluded that the delay was caused by Defendant's trial strategy—that is to acquiesce to continuances and rule extensions, remain silent, and then after many months of delay file a pro se motion to dismiss on speedy trial grounds. The district court characterized this conduct as a form of gamesmanship in which Defendant was agreeing to continuances only because he later intended to file a speedy trial claim. *See Barker*, 407 U.S. at 533-36 (attributing speedy trial delay to the defendant where the record clearly reflected that the defendant did not want a speedy trial but rather acquiesced to continuances as part of a discernible trial strategy involving defense counsel's "gamble" that the defendant's accomplice would be acquitted which in turn would greatly diminish the likelihood that the defendant would be tried).

**{15}** Our review of the record does not support the district court's characterization of the reasons for the delay during the second period. Our evaluation is based on a review of the log of e-mails Defendant submitted in conjunction with other documents in the record. We digress here to summarize the content of those e-mails. In the following discussion, we focus at certain points on the conduct of the attorneys representing Defendant and the State. In referring to some of the activities of the parties, we use the terms "counsel for Defendant" or "counsel for the State" in some instances to clarify the actions taken.

**{16}** A witness list and an amended witness list were submitted by the State to the district court and to Defendant in February and March 2006, more than a month after Defendant was arraigned. Mailing addresses were provided for only three of the State's nineteen witnesses. Five witnesses were listed as "c/o DA's Office." The addresses for two of the witnesses

5

were listed as unknown.

**{17}** On June 13, 2006, a month after counsel for Defendant had been substituted, counsel for Defendant sent an e-mail to the State indicating that she had received documentary discovery and was prepared to schedule pretrial interviews of the State's witnesses. That same day, both counsel exchanged e-mails regarding potential dates for those interviews in July. On October 2, 2006, four months after counsel for Defendant's initial e-mail requesting witness interviews, she sent another e-mail to the State again requesting witness interviews. The State responded, immediately providing potential interview dates throughout October.

**{18}** Five of the State's nineteen witnesses were scheduled for interviews on November 30, 2006, including three of the witnesses listed as "c/o DA's Office." Written confirmation of those interviews on official State letterhead are included in the record. However, no interviews occurred on that date. According to counsel for Defendant, she arrived at the district attorney's office on November 30 as planned. However, when she encountered counsel for the State, he informed her that he did not realize they had agreed to conduct interviews that day.

**{19}** On December 12 and 13, 2006, counsel for Defendant again requested that the State schedule witness interviews. On December 14, the State responded and asked counsel for Defendant about her availability in January 2007. Counsel for Defendant responded immediately and provided two dates in mid-January. The State responded to that e-mail immediately and scheduled interviews for two witnesses on January 11, 2007. Only two of the witnesses could be interviewed on that date because, according to counsel for Defendant, the State claimed that it needed more time to schedule the other witnesses for interviews.

**{20}** Only one of the two witnesses scheduled for January 11 was interviewed. It is unclear why the second witness did not appear. The witness who did appear departed before the interview was completed. The witness appeared to have mental difficulties and was unable to respond to questions.

**{21}** On January 22, 2007, the State sent counsel for Defendant an e-mail indicating that interviews had been scheduled for January 30 and 31, 2007. A series of e-mails between counsel were exchanged on January 26, 2007, regarding those interviews. In those e-mails, counsel for Defendant initially informed the State that she had a conflict potentially interfering with those interviews. The State responded that the police officers scheduled for interviews on that date could not be rescheduled on such short notice because of an administrative policy within the police department. Accordingly, counsel for Defendant agreed to alter her schedule to ensure the officers were interviewed and suggested that the remaining witnesses be rescheduled. The State provided dates in the early part of February for those interviews. Counsel for Defendant responded that some of the proposed dates in early February would not work for her but that she could arrange to have an investigator from the public defender's office (the Investigator) attend those interviews in her place.

**{22}** The police officers did not appear at the district attorney's office for the scheduled

interviews on January 31. Counsel for Defendant alleged at the hearing on the motion to dismiss that the State failed to properly subpoena them. The State did not address this assertion and provided no alternative explanation. No interviews occurred in February.

**{23}** On June 8, 2007, the Investigator sent an e-mail to the State requesting that the interviews be scheduled. The State never responded to the Investigator's e-mail. On June 27, 2007, counsel for the State was substituted. On July 3, 2007, substituted counsel for the State e-mailed counsel for Defendant. The State inquired whether witness interviews were necessary and with which witnesses. Counsel for Defendant responded to this e-mail immediately and pointed out that not a single witness had yet been fully interviewed despite her concerted efforts to get those interviews set. She added that, in her view, former counsel for the State had put Defendant's matter "on the back burner."

**{24}** On July 3, 2007, the State e-mailed the Investigator. On July 9, 2007, the Investigator replied to that e-mail and provided dates she was available for interviews in mid-July. Counsel for the State responded that he would make efforts to schedule interviews for that time period. The Investigator forwarded this message to counsel for Defendant.

**{25}** Witness interviews were scheduled by the State for July 16, 2007. However, those interviews were canceled by the State and rescheduled for July 20 at 1:00 p.m. On July 20, the State e-mailed the Investigator, indicating that it was necessary to postpone those interviews. The Investigator forwarded that e-mail to counsel for Defendant. Counsel for Defendant e-mailed the State immediately thereafter informing the State that yet another delay with the interviews was objectionable. The State later explained at the hearing on Defendant's motion to dismiss that it was necessary to cancel those interviews because if the State went forward with them it could not accept a plea bargain if Defendant later decided that a plea was preferable to trial. Counsel for the State further explained that this was an internal policy that he only recently became familiar with because he was new to the crimes against children unit. The interviews were rescheduled for July 25, 2007, and then again canceled by the State.

**{26}** It appears that Defendant did diligently attempt to interview the necessary witnesses, but that for whatever reason, the State repeatedly failed to schedule interviews or would schedule them and then cancel. As of the time the motion for speedy trial was filed, not a single witness had been completely interviewed.

**{27}** The record also contains numerous continuances and six-month rule extensions. From May 2006 until July 2007, Defendant did in fact stipulate to several trial continuances and at least two Rule 5-604 petitions. The State points to Defendant's conduct in stipulating to continuances and rule extensions. Relying on *State v. Tarango*, 105 N.M. 592, 595, 734 P.2d 1275, 1278 (Ct. App.1987), *overruled on other grounds by Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990), and *State v. Montoya*, 119 N.M. 95, 97, 888 P.2d 977, 979 (Ct. App. 1994), the State argues that Defendant cannot legitimately complain about delays he requested or stipulated to.

**{28}** We agree with the general principle that "where a defendant causes or contributes

to the delay, or consents to the delay, he may not complain of a denial of the right [to a speedy trial]." *State v. Mascarenas*, 84 N.M. 153, 155, 500 P.2d 438, 440 (Ct. App. 1972). *Tarango* and *Montoya*, however, are distinguishable. In *Tarango*, the defendant was a fugitive or imprisoned in another state for most of the delay period, and our Court concluded that this portion of the delay period would be attributable to him. 105 N.M. at 595, 734 P.2d at 1278. In the case before us, Defendant was incarcerated the entire time pending trial. In *Montoya*, the defendant requested or stipulated to continuances to accommodate his counsel's schedule. 119 N.M. at 96, 888 P.2d at 978. Here, the stipulations were based on the State's failure to provide witness interviews.

**{29}** We view this matter as more analogous to *Johnson* and *Talamante*, cases in which the defendants sought to interview the state's witnesses but were prevented from doing so by the state's inaction. *Johnson*, 2007-NMCA-107, ¶ 3; *State v. Talamante*, 2003-NMCA-135, ¶ 12, 134 N.M. 539, 80 P.3d 476. In both cases, we held that the delay resulting from the state's failure to make its witnesses available for pretrial interviews, which in turn prevented the defendants from preparing for trial, was delay attributable to the state and, thus, weighed against it for purposes of the speedy trial analysis. *Johnson*, 2007-NMCA-107, ¶¶ 15, 25; *Talamante*, 2003-NMCA-135, ¶ 14. Our holdings were premised on the correlated principles that "[i]t is ultimately the state's duty to make sure that [the] defendants are brought to trial in a timely manner," *Stock*, 2006-NMCA-140, ¶ 25, and that it is unacceptable for the state to act with indifference toward that duty. *Zurla*, 109 N.M. at 643, 789 P.2d at 591. As was the case in *Johnson* and *Talamante*, the record in this matter demonstrates that Defendant's concerted efforts to prod the State to schedule interviews proved futile. The State repeatedly failed to schedule the interviews or canceled them for reasons that cannot be attributed to Defendant. The State's inability to schedule essential witness interviews despite its repeated assurances that it would do so constitutes bureaucratic indifference. *See Johnson*, 2007-NMCA-107, ¶ 15; *Stock*, 2006-NMCA-140, ¶ 25; *Talamante*, 2003-NMCA-135, ¶ 14. "It is well established that bureaucratic indifference weighs against the [s]tate[.]" *State v. Palacio*, 2009-NMCA-074, ¶ 17, 146 N.M. 594, 212 P.3d 1148. Accordingly, we hold that the reasons for the majority of the delay in this matter weigh against the State and in Defendant's favor.

**{30}** The district court's findings that counsel for Defendant was unavailable between March 29, 2007, and April 30, 2007, and that Defendant requested a psychological evaluation of the alleged victim does not alter this conclusion. Neither of these matters changes the fact that the witness interviews were not proceeding. Furthermore, the record clearly reflects that counsel for Defendant informed the State before her planned leave that the Investigator was assisting her and could attend any scheduled interviews in her absence. Yet no interviews occurred during her month-long absence, and there is no indication in the record that the State made any attempt to schedule interviews with the Investigator during this time. The psychological evaluation is mentioned in only one of the State's requests for a rule extension. It is unclear whether this psychological evaluation ever took place or whether the issue was ever discussed again, but it does not appear to have been a factor in the delay.

3.      **Assertion of the right**

8

**{31}** "[T]he defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Garza*, 2009-NMSC-038, ¶ 31 (internal quotation marks and citation omitted). "Generally, we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Id.* ¶ 32. "Thus, we accord weight to the frequency and force of the defendant's objections to the delay." *Id.* (internal quotation marks and citation omitted). "We also analyze the defendant's actions with regard to the delay." *Id.* "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether . . . the issue was raised on appeal as afterthought." *Id.* "It is necessary, therefore, to closely analyze the circumstances of each case." *Id.* ¶ 33.

**{32}** The district court weighed this factor substantially against Defendant primarily because of the many stipulated continuances and rule extensions and its conclusion that Defendant forestalled asserting his right to a speedy trial as part of a deliberate trial strategy. As previously discussed, this conclusion is not supported by the record. Rather, the following aspects of Defendant's assertion of his right persuade us that this factor should weigh in Defendant's favor.

**{33}** We recognize that generally, the closer to trial an assertion is made, the less weight it is given. *See State v. O'Neal*, 2009-NMCA-020, ¶¶ 25-26, 145 N.M. 604, 203 P.3d 135 (filed 2008) (determining that under the facts of that case, the defendant's assertion of his speedy trial right twenty-two days before trial did not weigh in his favor); *State v. Downey*, 2007-NMCA-046, ¶ 44, 141 N.M. 455, 157 P.3d 20 (concluding that the defendant's first assertion of the speedy trial right eleven days before trial and thirty months after his arrest did not weigh in his favor), *rev'd on other grounds*, 2008-NMSC-061, 145 N.M. 232, 195 P.3d 1244. Here, initial counsel for Defendant entered an appearance and filed a pro forma demand for speedy trial on January 31, 2006, roughly a month after Defendant was arraigned. We assign some weight, albeit minimal, in Defendant's favor for this perfunctory assertion. *Marquez*, 2001-NMCA-062, ¶ 21. In mid-July 2007, approximately two and one-half months before the last scheduled trial date, Defendant filed a pro se motion to dismiss on speedy trial grounds. Although the motion is not contained in the record, the State responded to the motion on August 16, 2007, and in its response the State listed the motion as filed on July 13, 2007. We assign weight to this assertion. *See id.* ¶ 22 (citing the defendant's assertion of his right immediately after arrest and then eight months later, six days before his trial, as grounds for weighing the assertion of the right factor in the defendant's favor).

**{34}** Defendant argues that he manifested his desire for a speedy trial by opposing the last two Rule 5-604 extensions. In *Marquez*, we considered the defendant's objection, based upon speedy trial grounds, to the state's Rule 5-604 petition as grounds for weighing Defendant's assertion of his right in his favor. *Marquez*, 2001-NMCA-062, ¶ 22. While the record reveals that Defendant did oppose the motions, there is no mention of a speedy trial concern as the basis. Accordingly, we do not view Defendant's objections as assertions of his speedy trial right.

**{35}** Defendant asserted his right twice; pro forma at the beginning of his case and pro se

9

approximately two and one-half months before the date of his last scheduled trial. We weigh this factor only slightly in Defendant's favor.

## 4.     Prejudice

**{36}**     We have identified three different types of prejudice in a speedy trial analysis: (1) oppressive pretrial incarceration, (2) the accused's anxiety and concern, and (3) the possibility of an impairment to the defense. *Palacio*, 2009-NMCA-074, ¶ 27. We focus on the first factor because in this case, the period of Defendant's pretrial incarceration was approximately twenty-two months. The district court looked to the twenty-two months of pretrial incarceration and concluded that "this prong weighs slightly in favor of . . . Defendant." We agree.

**{37}**     "[I]t cannot be denied that two-and-one-half years of pretrial incarceration . . . one's life on indefinite hold, waiting for one's trial to commence—is very substantial prejudice, of the precise kind that the Speedy Trial Clause was meant to avoid." *Garza*, 2009-NMSC-038, ¶ 35 (alteration in original) (internal quotation marks and citation omitted). We have concluded that pretrial incarceration of three and one-half years in jail is unacceptably long and is thus oppressive. *See State v. Laney*, 2003-NMCA-144, ¶ 29, 134 N.M. 648, 81 P.3d 591 ("With respect to pretrial incarceration, the question is whether the length of time was unacceptably long in that it became unduly prejudicial so as to factor into the analysis."). In addition, the record demonstrates some evidence that Defendant suffered anxiety and that he was a heart nurse who while incarcerated had not worked for two years and thus was "going to lose credits and that kind of thing." While we give this some weight, the main factor to be evaluated is the length of incarceration. Defendant did suffer some prejudice from being incarcerated pending trial for almost two years, and therefore we agree with the district court that this factor weighs slightly in Defendant's favor.

## 5.     Balancing the factors

**{38}**     The total delay in this matter was roughly twenty-two months. As this was a complex case, this amounted to a delay of seven months beyond the bare minimum required to trigger judicial scrutiny. We conclude that this degree of delay weighs against the State and in Defendant's favor. We also conclude that the majority of the delay was caused by the State's failure to schedule its witnesses for interviews. Accordingly, we weigh the reasons for the delay against the State and in Defendant's favor. We also conclude that Defendant's assertion of his right to a speedy trial and the prejudice resulting from the delay weigh slightly against the State and in Defendant's favor. We are aware that this is a close case. Although all of the factors weigh in Defendant's favor, none weighs in his favor heavily. Nevertheless, looking at the case in its entirely, we conclude that Defendant's constitutional right to a speedy trial was violated.

## III.     CONCLUSION

**{39}**     Defendant's plea and sentence are reversed and the cause is remanded to the district court with instructions to dismiss the charges against Defendant. In light of this disposition,

we need not address the remaining issue on appeal, the district court's denial of Defendant's motion to exclude witnesses.

**{40}    IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**ROBERT E. ROBLES, Judge**

**Topic Index for *State v. Moreno*, Docket No. 28,312**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-SX | Sexual Offences |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-ST | Speedy Trial |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-PJ | Prejudice |
| CA-RD | Right to Speedy Trial |
| CA-SP | Speedy Trial |
| CA-WT | Witnesses |