This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **No. A-1-CA-35215**

**JOSEPH VIGIL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Mary Marlowe Sommer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Works L.L.C.
John A. McCall
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE**, Judge.

**{1}** Defendant Joseph Vigil appeals from his convictions of armed robbery and attempt to commit armed robbery, contending that his right to a speedy trial was violated and that there was insufficient evidence to support the jury's verdict. We affirm.

### BACKGROUND

**{2}** On March 12, 2013, Defendant drove to an Allsup's gas station in Espanola with Frankie Garduno, parked at a gas pump, and stayed "a while." When Cody Tapia

arrived and stopped adjacent to a different gas pump, Defendant quickly relocated the black Ford pickup truck he was driving to the location directly behind Tapia's vehicle. According to eyewitnesses Garduno then "jumped out of the [truck] and started swinging a gun around." Tapia testified that within seconds of Defendant's arrival behind him, Garduno exited the truck and appeared at his passenger, Michelle Radosevich's, side window, pointed the gun past her and at him, and demanded money. Tapia complied by handing Garduno his wallet. Tapia testified that Defendant, who remained in the driver's seat of the black pickup truck, was trying unsuccessfully to hold up a sweatshirt to hide his face, and that he heard Defendant instruct Garduno, "Get it. Let's go. Hurry up." Vigil testified that he also saw Defendant holding up his shirt to hide his face while telling Garduno, "Get in. What are you doing? Let's go." Another witness, Jose Atencio, testified that Defendant instructed Garduno, "Let's go," and hid his face with a white sweater.

**{3}** Garduno then demanded more money from Radosevich, and when she refused to give him her purse, Garduno began striking Radosevich with the firearm in his hand. Radosevich also testified that Defendant told Garduno, "Come on, get it, let's go," during the robbery. Tapia, Radosevich, Vigil, and Atencio all testified that Defendant did not seem shocked or surprised by Garduno's actions. Tapia eventually brought Garduno to the ground in a chokehold, and other witnesses helped Tapia restrain Garduno until the police arrived. After Tapia restrained Garduno, Defendant exited the truck and fled the gas station on foot. Police eventually apprehended Defendant and returned him to the gas station.

**{4}** Prior to the trial at which he was convicted, Defendant filed a motion to dismiss for violation of his speedy trial right, and the State responded opposing it. The district court heard and denied the motion without issuing findings of fact and conclusions of law. Afterward, Defendant appealed, asserting in his docketing statement that his right to a speedy trial had been violated, and this Court "remanded to the district court for the limited purpose of obtaining written findings and conclusions on the various speedy trial considerations[.]" The district court entered findings of fact and conclusions of law on March 15, 2016, after which full briefing ensued. We address the pertinent aspects of the district court's findings and conclusions as necessary in our discussion below.

## DISCUSSION

### I. The District Court Did Not Err in Denying Defendant's Motion to Dismiss for Violation of His Speedy Trial Right

**{5}** On appeal, Defendant contends that the delay in bringing his case to trial was twice as long as the threshold for when that delay becomes presumptively prejudicial, and that the district court erred in classifying certain periods of delay as neutral. Defendant further argues that he made multiple demands for a speedy trial that should be weighed in his favor, and that he demonstrated with particularity that he was prejudiced based upon his Post-Traumatic Stress Disorder (PTSD) diagnosis, and the

fact that Tapia's and Radosevich's testimony changed between the grand jury indictment and trial.

{6}     The State agrees that the delay in bringing Defendant to trial, which was ultimately a little over twenty-six months, is presumptively prejudicial since this is a simple case, and thus weighs heavily in Defendant's favor, but argues that application and balancing of the remaining factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972), warrant affirmance. The State argues that seven months of delay weigh against Defendant, "over eleven months weigh neutrally, five months either weigh against [Defendant] or they weigh neutrally, and less than two months weigh either neutrally or slightly in [Defendant's] favor." Additionally, the State contends that because all but one of Defendant's speedy trial demands were pro forma, they should weigh only slightly in his favor. Lastly, the State argues that Defendant did not make a particularized showing of prejudice because there was no oppressive pretrial incarceration, nor evidence establishing undue anxiety or that the delay impacted Defendant's ability to present a defense.

## A.     General Principles and Standard of Review

{7}     The Sixth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" *See State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). The New Mexico Constitution offers similar protection and provides that "[i]n all criminal prosecutions, the accused shall have the right to . . . a speedy public trial." N.M. Const. art. II, § 14. This right recognizes that "there is a societal interest in bringing an accused to trial" and "[t]he heart of the right . . . is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12.

{8}     Our Supreme Court has adopted the United States Supreme Court's balancing test articulated in *Barker*, which identified four factors to be weighed by a reviewing court in analyzing a defendant's speedy trial claim: (1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the actual prejudice to the defendant caused by the delay. *Garza*, 2009-NMSC-038, ¶ 13. "Each of these factors is weighed either in favor of or against the [s]tate or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *State v. Spearman*, 2012-NMSC-023, ¶ 17, 283 P.3d 272. "[T]he factors have no talismanic qualities, and none of them are a necessary or sufficient condition to the finding of a violation of the right [to a] speedy trial." *Id.* ¶ 18 (alteration, internal quotation marks, and citation omitted). "Rather they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* (internal quotation marks and citation omitted). "[W]e give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *Id.* ¶ 19 (alterations, internal quotation marks, and citation omitted); *State v. Lujan*, 2015-NMCA-032, ¶ 10, 345 P.3d 1103 (same).

**B.    Discussion and Weighing of the Factors**

**1.    Length of Delay**

**{9}** The "length of delay" factor serves a dual purpose when analyzing a speedy trial violation. *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. First, it acts as a threshold triggering mechanism used to determine whether the delay is "presumptively prejudicial" so as to continue with a full speedy trial analysis. *Id.* Second, it is the first independent *Barker* factor that must be addressed to determine whether a defendant's speedy trial rights have been violated. *See id.* ¶ 22. If the delay crosses the "presumptively prejudicial" threshold, a speedy trial analysis is warranted. *Id.* A delay is presumptively prejudicial if the delay exceeds "[twelve months] for a simple case, [fifteen] months for a case of intermediate complexity, and [eighteen] months for a complex case." *Id.* We note here that the State calculated the delay from the date of arrest until trial, but Defendant calculated the delay from Defendant's final remand into custody until trial. In this case, we calculate the delay from the date of arrest until trial, *see State v. Brown*, 2017-NMCA-046, ¶ 17, 396 P.3d 171, thus we utilize the State's calculation of the delay, which was from Defendant's arrest on March 12, 2013, until his trial began on May 18, 2015. The parties and the district court agree that this case was simple and the parties agree that the delay of just over twenty-six months exceeded the twelve month benchmark for simple cases, and thus a full speedy trial analysis is warranted. The delay of just over twenty-six months weighs heavily in Defendant's favor, since typically any delay over twelve months for a simple case is presumptively prejudicial. *See Serros*, 2016-NMSC-008, ¶ 22.

**2.    Reasons for Delay**

**{10}** "Closely related to [the] length of delay is the reason the [state] assigns to justify the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). "Our courts have recognized three types of delay that may be attributable to the state and one type attributable to the defense." *Brown*, 2017-NMCA-046, ¶ 18. First, intentional delay "is a deliberate attempt to delay prosecution of the case in order to hamper the defense[,]" which weighs heavily against the State. *Id.* Second, negligent or administrative delay "weighs more lightly against the state, but it [is] still [an] . . . unacceptable reason[] for delaying a criminal prosecution once it has begun." *Id.* (internal quotation marks and citation omitted). As the length of delay attributable to negligent or administrative delay increases, "this type of delay begins to weigh more heavily against the state." *Id.* Third, there are various types of delay that are justified for valid reasons, such as a missing witness, "which are neutral and do not weigh against the state." *Id.* Finally, there is delay that is caused by the defendant, which is weighed against him or her. *See id.* This Court must analyze each period of delay separately to determine the reason for each delay and against which party the delay weighs.

**a.    March 12, 2013 to October 29, 2013—Seven and a Half Months of Neutral Delay**

**{11}** Defendant was arrested on March 12, 2013, and indicted for attempt to commit armed robbery, conspiracy to commit armed robbery, felon in possession of a firearm, and armed robbery.[1] Defendant's case was joined with Garduno's on April 16, 2013. [**RP 5**] Defendant was arraigned on April 22, 2013, and the same day the district court entered a discovery order and trial scheduling order, the latter of which scheduled jury selection for August 20, 2013. On July 29, 2013, Judge Stephen Pfeffer entered an amended trial scheduling order that set trial for September 24, 2013. Defendant moved to sever his case from Garduno's during a pretrial conference on August 26, 2013, a request to which the State stipulated, and Judge Pfeffer entered an order severing the cases that same day. On September 23, 2013, and based on Defendant's own request during the August 26, 2013 hearing, Judge Pfeffer ordered that Defendant be evaluated for competency to stand trial and stayed the case until the district court determined Defendant's competency.[2]

**{12}** Judge Sommer, the fourth district court judge to preside over this case and who entered findings and conclusions on remand, found this period of time to be neutral because it "was due to a combination of court scheduling, reassignment of cases, and delays that should be held neutral between the parties." Defendant agrees that the delay from Defendant's arraignment on April 22, 2013, to August 20, 2013, and from August 26, 2013, to September 23, 2013, was neutral.

**{13}** Judge Pfeffer next set trial for October 29, 2013, but announced his retirement six days thereafter. Although a notice of judge reassignment is not contained within the record, sometime between when Defendant's case was severed from Garduno's on August 26, 2013 and October 25, 2013, when Defendant peremptorily excused him, Judge Glenn Ellington was briefly assigned to this case. On the same day Defendant excused Judge Ellington, Judge Raphaelson was assigned to preside over this case. Given Judge Raphaelson's ensuing order resetting the trial, it did not take place as scheduled on October 29, 2013.

**{14}** Defendant argues that the delay from September 23, 2013 to October 29, 2013, was because of Judge Pfeffer's retirement and was therefore administrative delay and

---

1During a pre-trial conference, the State acknowledged that the felon in possession of a firearm count should be severed from the rest of the case and stated that it would dismiss that count. It does not appear that the State filed its dismissal of that count, but on the first day of trial, the State filed an amended grand jury indictment that charged Defendant with conspiracy to commit armed robbery, armed robbery of Tapia, and attempt to commit armed robbery of Radosevich, omitting the felon in possession of a firearm count. The next day, the State filed a second amended grand jury indictment that charged Defendant with the same crimes, but amended Count 2, armed robbery, to state that Defendant stole a wallet and sunglasses from Tapia, not U.S. currency, which was what the first amended grand jury indictment stated. The district court declared a mistrial with respect to Count 1, conspiracy to commit armed robbery, because the jury could not reach a unanimous decision. The jury ultimately convicted Defendant of count 2, armed robbery, and Count 3, attempt to commit armed robbery.
2Defendant's attorney later informed District Judge Sheri A. Raphaelson, the third judge to preside over this case, and the State that Dr. Susan Cave evaluated Defendant and found him to be competent. The district court's finding that there was "nothing further in the record about the [competency] evaluation taking place" was incorrect, although the district court's suspicion "that the competency matter got lost in the shuffle" was reflected in the fact that the competency stay was never lifted.

thus weighs in favor of Defendant. Judge Sommer concluded that the delay was neutral even though it was administrative. However, delays due to competency evaluations and proceedings "should generally not count against the state for speedy trial purposes because the state cannot try an incompetent defendant." *State v. Stock*, 2006-NMCA-140, ¶ 19, 140 N.M. 676, 147 P.3d 885. We do not agree that the delay from September 23, 2013, to October 29, 2013, should weigh in Defendant's favor (and against the State) since that delay was due to the competency evaluation he requested. Because we conclude there was no administrative delay prior to October 30, 2013, and the case was proceeding normally until October 30, 2013, we agree with the district court that the period of time between March 12, 2013, and October 29, 2013, should be weighed neutrally.

### b.     October 30, 2013 to March 24, 2014—Five Months of Administrative   Delay

**{15}**    Judge Raphaelson next scheduled trial to take place on March 24, 2014. This nearly five month period of delay qualifies as administrative delay since it was a product of judicial reassignments following Judge Pfeffer's retirement, and as such it weighs against the State. *See Garza*, 2009-NMSC-038, ¶ 29 ("The remainder of the delay is attributable to the multiple reassignments of judges in the district court. This delay falls within the administrative burdens on the criminal justice system, such as overcrowded courts[.] . . . For purposes of analyzing a speedy trial claim, this type of delay is considered negligent delay and is weighed against the State accordingly." (citations omitted). Thus, we do not agree with the district court's conclusion that this portion of the delay was neutral. Rather, because the delay between October 30, 2013, and March 24, 2014, was administrative, "the extent to which it weighs against the [s]tate depends on the length of the delay." *Garza*, 2009-NMSC-038, ¶ 30. Five months of delay comprises almost half of the presumptively prejudicial delay of twelve months for a simple case and thus, this time period weighs against the State because this delay "was negligent but not protracted, this factor weighs only slightly in [the d]efendant's favor." *Id.* ¶¶ 9, 30 (concluding ten-month and six-day delay, approximately six months of which was administrative, extended "only slightly beyond the threshold to trigger the speedy trial inquiry, and, therefore, is not extraordinary.")

### c.     March 25, 2014 to October 2, 2014—Six Months of Delay Caused by Defendant

**{16}**    On February 10, 2014, Judge Raphaelson reset the trial date at Defendant's request from March 25, 2014 to July 14, 2014, because he wished to have his former co-defendant Garduno testify at his trial, and Garduno's trial would not be completed until the summer. During docket call on June 10, 2014, defense counsel told the district court that jury selection could be scheduled for September since he believed that Garduno's trial would be completed by then. The district court then set jury selection for September 16, 2014, with trial to begin on October 1, 2014. "[A]ny delay caused by the defendant generally weighs against the defendant." *State v. Deans*, 2019-NMCA-015, ¶ 10, 435 P.3d 1280. Judge Sommer concluded that the delay from March 24, 2014, to September 16, 2014, was attributable to Defendant "based upon [the] trial strategy of

waiting for the trial of Garduno to take place." We agree, and also conclude that the ensuing delay until October 2, 2014, is attributable to Defendant for the same reason, and thus this portion of the delay from March 25, 2014 to October 2, 2014, weighs against Defendant. *See id.*

### d.    October 3, 2014 to January 8, 2015—Three Months of Neutral Delay

**{17}**    Thirteen days before jury selection for the October 3, 2014, trial setting, defense counsel filed a motion to withdraw because he discovered that he represented Garduno in a separate matter in May 2009. The next day, the district court permitted defense counsel to withdraw, vacated the jury selection and trial settings, and declared that "[t]he delay caused by this withdrawal is hereby counted against [D]efendant." On September 24, 2014, David Silva entered his appearance for Defendant and demanded a speedy trial on Defendant's behalf. On November 20, 2014, the district court entered an amended scheduling order setting docket call for February 24, 2015, and jury selection for March 23, 2015. On January 8, 2015, Defendant's case was reassigned, this time to Judge Sommer.

**{18}**    We do not agree with the district court's conclusion that this period of delay from October 3, 2014 to January 8, 2015, should be weighed against Defendant. Although "the actions of defense counsel ordinarily are attributable to the defendant[,]" *Serros*, 2016-NMSC-008, ¶ 46, "[i]t seems unfair, however, to attribute delays to [the d]efendant when the delays are solely attributable to his counsel[,]" especially in the context of whether his right to a speedy trial was violated. *Stock*, 2006-NMCA-140, ¶ 21 (refusing to hold delay of one-and-a-half years against the defendant because his counsel failed to communicate the result of his competency evaluation for that long). We therefore conclude that this period of delay is neutral and should not be held against either party.

### e.    January 9, 2015 to March 11, 2015—Two Months of Administrative Delay

**{19}**    On January 15, 2015, the district court entered an amended scheduling order setting trial for April 14, 2015. On February 6, 2015, Defendant filed his motion to dismiss for violation of his speedy trial right, and the State responded opposing it. The district court heard the motion on March 11, 2015. Judge Sommer concluded that this delay was due to the district court's reassignment of cases. As we stated earlier, delays associated with the reassignment of judges and general administrative burdens on the criminal justice system, as this delay was, are administrative delay and weigh against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (holding that delays because of judicial resassignments are administrative, but are considered negligent and "weighed against the [s]tate accordingly"). The degree to which this delay weighs against the State depends upon its length, and because this delay lasted only two months, it was "negligent but not protracted" and thus weighs "only slightly in [the d]efendant's favor." *Id.* ¶¶ 29-30.

### f.    March 12, 2015 to May 4, 2015—Two Months of Administrative Delay

**{20}** During this period of time, this case proceeded normally following the district court's denial of Defendant's motion to dismiss for violation of his speedy trial right. As such, this is neutral delay. *See State v. Parrish*, 2011-NMCA-033, ¶ 25, 149 N.M 506, 252 P.3d 730 (weighing period neutrally where "the case progressed with customary promptness").

### g. May 5, 2015 to May 18, 2015—Two Weeks of State Delay

**{21}** Approximately five weeks before trial, the State moved to change the trial date from May 4, 2015 to May 18, 2015, because Radosevich and Atencio were not available on May 4, 2015. Because the State's witnesses were not available on the trial date, this delay was justified and is therefore "neutral and do[es] not weigh against the state." *Brown*, 2017-NMCA-046, ¶ 18.

### h. Overall Determination of the Reasons for Delay

**{22}** We conclude that twenty-six months of delay occurred in this case. Approximately thirteen months are neutral delay, seven months were administrative delay weighed against the State, and six months were caused by Defendant and thus are weighed against him. Because half of the delay in this case is neutral delay, and the State caused only one month more delay than Defendant, we conclude that the reasons for delay generally do not weigh for or against either party. *See State v. Castro*, 2017-NMSC-027, ¶¶ 23-24, 402 P.3d 688 (concluding that fifteen months of negligent delay weighed slightly against the state, and that the remaining seventeen months of delay were either justified or attributable to the defendant, and weighing reasons for delay factor "only slightly against the [s]tate"); *Gallegos*, 2016-NMCA-076, ¶ 22 (weighing reasons for the delay factor against the state, but not heavily, because a little over half of the delay in the case was neutral, and a little less than half of the delay was weighed against the state); *State v. Fierro*, 2012-NMCA-054, ¶¶ 39-49, 278 P.3d 541 (holding that reasons for the delay factor weighed against the defendant when there was ten to eleven months of delay that weighed against the state, eleven months of neutral delay, and two-and-a-half years of delay caused by the defendant).

### 3. Assertion of the Right

**{23}** "[T]he timeliness and vigor with which the right [to a speedy trial] is asserted may be considered as an indication of whether a defendant was denied [the right] to [a] speedy trial over his objection or whether the issue was raised on appeal as [an] afterthought." *Garza*, 2009-NMSC-038, ¶ 32. Accordingly, we consider Defendant's assertion or failure to assert his right to a speedy trial as a factor in determining whether Defendant was deprived of that right. *See id.* ¶ 31. In this consideration, "[the appellate courts] assess the timing of the defendant's assertion and the manner in which the right was asserted." *Id.* ¶ 32. "[W]e accord weight to the 'frequency and force' of the defendant's objections to the delay [and] analyze the defendant's actions with regard to the delay." *Id.* (citations omitted). The individual circumstances of each case must be closely analyzed. *Id.* ¶ 33.

**{24}** Defendant asserted his right to a speedy trial four times: first in a pro-forma assertion in a demand for a speedy trial filed on May 8, 2013, when his first attorney entered his appearance; second in another pro-forma assertion in a second demand for a speedy trial filed on December 20, 2013, when his second attorney entered his appearance; third in another pro-forma assertion in a third demand for a speedy trial filed on September 29, 2014, when his third attorney entered his appearance; and finally in his motion to dismiss for violation of his speedy trial right on February 6, 2015.

**{25}** Although the district court did not discuss Defendant's third assertion, the district court discounted the first two assertions because Defendant requested a competency evaluation soon after the first assertion and because the same defense counsel who filed the second assertion also later moved to delay the trial date multiple times, and then withdrew shortly before a trial setting, which resulted in further delay. We disagree with the district court's discounting of two out of Defendant's three pro-forma assertions, since pro-forma assertions "still are entitled to some weight." *Serros*, 2016-NMSC-008, ¶ 77; *Garza*, 2009-NMSC-038, ¶ 34 (holding that a single demand for a speedy trial, "tucked within the waiver of arraignment and not guilty plea," was sufficient in combination with no evidence that the defendant had acquiesced to the delay and weighing this factor slightly in the defendant's favor). We conclude that Defendant's four assertions of his speedy trial right should weigh in his favor.

### 4.    Prejudice

**{26}** "The 'heart' of the speedy trial right 'is preventing prejudice to the accused.'" *Lujan*, 2015-NMCA-032, ¶ 20 (quoting *Garza*, 2009-NMSC-038, ¶ 12). Prejudice to a defendant during a speedy trial analysis is determined through an investigation into conditions that may arise from lengthy pretrial delays. "We have identified three different types of prejudice in a speedy trial analysis: (1) oppressive pretrial incarceration, (2) the accused's anxiety and concern, and (3) the possibility of an impairment to the defense." *State v. Moreno*, 2010-NMCA-044, ¶ 36, 148 N.M. 253, 233 P.3d 782. Generally, the defendant has the burden of proof to show "particularized prejudice." *Serros*, 2016-NMSC-008, ¶ 86 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." *Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citation omitted). "Therefore, we weigh this factor in the defendant's favor *only* where the pretrial incarceration or the anxiety suffered is undue." *Id.* (emphasis added). Defendant bears the burden in this regard. *See Serros*, 2016-NMSC-008, ¶ 89. Because this Court has determined that the reasons for the delay factor did not weigh in favor of either party, Defendant must establish the prejudice factor in order to show that his right to a speedy trial has been violated. *See id.*

**{27}** We first examine whether Defendant's pretrial incarceration was oppressive, which "depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.* ¶ 89 (internal quotation marks and citation omitted). "[T]he main factor to be evaluated is the length of incarceration." *Moreno*, 2010-NMCA-044, ¶ 37. "It

cannot be denied that two-and-one-half years of pretrial incarceration[, during which] one's life [is] on indefinite hold, waiting for one's trial to commence—is very substantial prejudice, of the precise kind that the [s]peedy [t]rial [c]lause was meant to avoid." *Id.* (alteration, internal quotation marks, and citation omitted). *Compare Serros*, 2016-NMSC-008, ¶ 90 (holding that pretrial incarceration of over four years is "oppressive on its face"), *with Salandre v. State*, 1991-NMSC-016, ¶ 29, 111 N.M. 422, 806 P.2d 562 (holding that bond restrictions for one month were not oppressive).

**{28}**   Here, Defendant was arrested on March 12, 2013, and was apparently out of custody by April 15, 2013, when he was summoned following his indictment. At his arraignment on April 22, 2013, Defendant was out of custody on a posted $25,000.00 cash or surety bond and was placed on electronic monitoring. That same day Defendant tested positive for cocaine and opiates and was remanded to custody. Defendant was again released from custody on May 20, 2013, but tested positive for cocaine again on or about June 14, 2013, and was remanded back to custody on or about July 8, 2013. Defendant remained in custody until his trial started on May 18, 2015. Defendant was therefore in custody for this case for approximately two years. Although two years is similar to the two-and-a-half years that *Moreno* termed "very substantial prejudice," 2010-NMCA-044, ¶ 37, Defendant had two opportunities to avoid incarceration, but because of his failure to comply with his conditions of release, those opportunities were not fruitful. We are not persuaded that Defendant has proven he suffered *undue* incarceration under the circumstances here, and because we so conclude, we need not consider Defendant's argument that his PTSD alone establishes that he was oppressively incarcerated due to the delay in this case. *See Garza*, 2009-NMSC-038, ¶ 35 ("[W]e weigh th[e prejudice] factor [due to oppressive pre-trial incarceration and anxiety and concern] in the defendant's favor *only* where the pretrial incarceration or the anxiety suffered is undue." (emphasis added)).

**{29}**   Defendant also argues that his defense was impaired by the delay in this case because Tapia's and Radosevich's trial testimony concerning his statements differed from their earlier statements to law enforcement and their grand jury testimony. Specifically, Tapia testified at the trial that Defendant said, "Get it. Let's go. Hurry up." Tapia later admitted that he did not refer to any statement made by Defendant during his grand jury testimony, in his written statement to law enforcement, or during pre-trial interviews. Similarly, Radosevich did not refer to any of Defendant's statements in her written statement to law enforcement, but testified in front of the grand jury that Defendant said, "Let's go, come on, knock it off," and "Come on, let's go, let's just go." During the trial, Radosevich testified that Defendant said, "Come on, get it, let's go[.]" Defendant speculates that the differences are due to the twenty-six months of delay.

**{30}**   We do not find the differences that Defendant highlights to be significant, and certainly not so significant that Defendant was prejudiced, in part because another witness corroborated Radosevich's and Tapia's trial testimony concerning Defendant's statements during the robbery. Vigil testified that Defendant said, "Get in. What are you doing? Let's go." In addition, the fact that Radosevich did not testify that Defendant said,

"Knock it off," during trial is not sufficient to conclude that Defendant was prejudiced by the delay in his trial.

**{31}** Defendant also argues that Tapia did not tell law enforcement or testify in front of the grand jury that Defendant held up a shirt to hide his face during the robbery, but that he later testified during trial that Defendant did so. Tapia was not the only witness who testified that Defendant held up a shirt to hide his face during the robbery; both Vigil and Atencio also testified to that fact. We therefore conclude that Tapia's testimony at trial concerning Defendant's efforts to hide his face during the robbery was not prejudicial in terms of the delay of his trial.

## C.      Balancing the Four Factors

**{32}** In weighing and balancing the *Barker* factors, "[c]entral to the analysis is whether a defendant suffered prejudice as a consequence of the delay." *Gallegos*, 2016-NMCA-076, ¶ 32. "However, even in the absence of a showing of particularized prejudice, the state violates a defendant's constitutional right to a speedy trial when the . . . length of delay and the reasons for the delay weigh heavily in the defendant's favor and the defendant has asserted his right and not acquiesced to the delay." *Id.* (alterations, internal quotation marks, and citation omitted). The length of the delay of twenty-six months weighs heavily in Defendant's favor, and his assertion of the right to a speedy trial also weighs in his favor, but not heavily. The reasons for delay do not weigh in favor of either party. Significantly, Defendant did not show with particularity that he was prejudiced because of undue anxiety and pre-trial incarceration, nor was Defendant's ability to defend himself impaired because of the delay. Primarily because Defendant did not suffer actual prejudice resulting from the delay, and also because Defendant and the State caused almost equal amounts of delay, which together equaled the amount of neutral delay, we affirm the district court's determination that the State did not violate Defendant's right to a speedy trial. *See id.* ¶¶ 33-34 (concluding no speedy trial violation where the defendant did not demonstrate particularized prejudice and there were almost seventeen months of neutral delay and almost sixteen months of negligent and administrative delay that was not weighed heavily against the state).

## II.     There Was Sufficient Evidence to Support Defendant's Convictions for Armed Robbery and Attempted Armed Robbery

**{33}** Defendant argues that there was insufficient evidence that he helped, caused, or encouraged the commission of armed robbery and attempted armed robbery. The State, in light of the jury instructions, contends that Defendant challenges only the third element of the crime of armed robbery: that Defendant helped, encouraged, or caused armed robbery to be committed.[3] Regarding the challenged element, the State

---

3It is not clear whether Defendant challenges the sufficiency of the evidence supporting his conviction for attempted armed robbery. The elements of both armed robbery and attempted armed robbery under accessory liability are substantially similar, so we assume for the purposes of this appeal that Defendant intended to challenge both convictions. *Compare* UJI 14-2822 NMRA (aiding or abetting; accessory to crime other than attempt and felony murder), *with* UJI 14-2820 NMRA (aiding or abetting; accessory to crime of attempt).

described the trial evidence that supported it, and argued that the jurors could have reasonably inferred that Defendant helped, encouraged, or caused armed robbery to be committed. We agree with the State and affirm.

## 1.    Standard of Review

**{34}**    In reviewing a sufficiency of the evidence claim, we must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). On appeal, "[w]e will not reweigh the evidence or attempt to draw alternative inferences from the evidence [as] we do not share the original ability of the jury to view the evidence and witnesses firsthand; therefore, we defer to the jury's findings." *State v. Sanchez*, 2015-NMCA-077, ¶ 16, 355 P.3d 51 (internal quotation marks and citation omitted). Additionally, "[e]vidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted).

## 2.    Analysis

**{35}**    For armed robbery as an accessory, the jury was instructed that Defendant:

> may be found guilty of armed robbery . . . even though he himself did not do the acts constituting the crime, if the [S]tate proves to your satisfaction beyond a reasonable doubt that:
>
> 1.    Defendant intended that armed robbery be committed;
> 2.    Armed robbery was committed;
> 3.    Defendant helped, encouraged[,] or caused armed robbery to be committed.

Similarly, for attempted armed robbery as an accessory, the jury was instructed that Defendant:

> may be found guilty of attempt to commit armed robbery . . . even though he himself did not do the acts constituting the attempt, if the [S]tate proves to your satisfaction beyond a reasonable doubt that:
>
> 1.    Defendant intended that armed robbery be committed;
>
> 2.    An attempt to commit armed robbery was committed;
>
> 3.    Defendant helped, encouraged[,] or caused the attempt to commit armed robbery.

The question on appeal is whether there was "substantial evidence of either a direct or circumstantial nature . . . to support a verdict of guilt beyond a reasonable doubt with respect to" whether Defendant helped, encouraged, or caused armed robbery and attempt to commit armed robbery to be committed. *Duran*, 2006-NMSC-035, ¶ 5 (internal quotation marks and citation omitted).

**{36}** The evidence presented by the State at trial was that Defendant intentionally drove the vehicle he and Garduno were in to a location directly behind Tapia's and Radosevich's vehicle. As soon as Defendant stopped the truck behind Tapia's and Radosevich's vehicle, Vigil testified that Garduno then "jumped out of the vehicle and started swinging a gun around."

**{37}** During Garduno's robbery of Tapia and Radosevich, Tapia observed that Defendant sat in the driver's seat of the truck while holding up a sweatshirt to hide his face and that "he didn't appear shocked. He was just in a hurry to get out of there." Radosevich, Vigil, and Atencio all testified that Defendant did not seem shocked or surprised by Garduno's actions. Tapia heard Defendant say during the robbery, "Get it. Let's go. Hurry up." Radosevich heard Defendant say something similar during the robbery: "Get it, let's go, come on, let's go, get it[.]" Vigil corroborated Tapia's and Radosevich's testimony, testifying that he heard Defendant say, "Get in. What are you doing? Let's go[,]" or "Let's go, get in," and also saw Defendant hold his shirt up to hide his face. Atencio also saw Defendant hold up a white sweater to hide his face and heard Defendant tell Garduno, "Let's go." After Tapia tackled Garduno, both Vigil and Atencio observed Defendant depart the scene on foot. *See State v. Flores*, 2010-NMSC-002, ¶ 23, 147 N.M. 542, 226 P.3d 641 ("Not only may [the d]efendant's acts before and during the crime provide evidence of intent [or] evidence of flight . . . may prove consciousness of guilt.").

**{38}** We have no trouble concluding that these facts constitute substantial evidence that proves beyond a reasonable doubt that Defendant helped, encouraged, or caused armed robbery and attempt to commit armed robbery. We therefore affirm Defendant's convictions for armed robbery and attempt to commit armed robbery.

**CONCLUSION**

**{39}** For the aforementioned reasons, we affirm the district court's denial of Defendant's motion to dismiss for violation of his right to a speedy trial. We also affirm Defendant's convictions for armed robbery and attempt to commit armed robbery as supported by substantial evidence.

**{40}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**BRIANA H. ZAMORA, Judge**