The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>April 19, 2023</u>

**No. A-1-CA-39508**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DENNIS R. PATE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Van Snow, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WRAY, Judge.**

{1}    Defendant Dennis R. Pate, appeals a jury's convictions for possession of a firearm by a felon, contrary to NMSA 1978, Section 30-7-16(A) (2018, amended 2022), and possession of a controlled substance (methamphetamine), contrary to NMSA 1978, Section 30-31-23 (2011, amended 2021). In addition to Defendant's other arguments, this appeal requires us to consider the impact of our Supreme Court's suspension of criminal jury trials during the COVID-19 pandemic on a criminal defendant's constitutional right to a speedy trial. In line with New Mexico's long-standing case-by-case approach to speedy trial analysis, *see State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387, we decline to broadly assign responsibility to any party for delay that occurred during the period in which criminal jury trials were suspended. Instead, we consider—as we always do—the facts and circumstances of a particular case in order to determine the reasons for a particular period of delay and weigh that delay in the constitutional balance. Careful balancing of the facts of the present case demonstrates no speedy trial violation. We further conclude that Defendant demonstrated no reversible error arising from the district court's denial of a mistrial and, although defense counsel's conduct was objectively unreasonable under the circumstances, the ineffective assistance of counsel claim is

best suited for a habeas corpus proceeding to develop an appropriate record of prejudice. We therefore affirm.

**BACKGROUND**

{2} On January 14, 2019, Clovis law enforcement executed a search warrant and discovered drugs and a firearm in a residence. Mail with the name "Dennis Ray Pate" was also recovered from the residence mailbox, which bore the name "Pate." Following arrest on April 9, 2019, Defendant was indicted and held in custody pending an August 16, 2019 trial setting. Trial was continued seven times before a jury found Defendant guilty of both charges on August 20, 2020. Defendant appeals. We will further develop additional facts as those facts become necessary to our analysis.

**DISCUSSION**

{3} Defendant makes three arguments on appeal: (1) the right to speedy trial was violated; (2) the district court abused its discretion in denying a motion for mistrial; and (3) defense counsel was ineffective. We first consider Defendant's speedy trial argument.

## I. Defendant's Right to Speedy Trial Was Not Violated

{4} In a speedy trial analysis,[1] "we give deference to the district court's factual findings, but we review the weighing and the balancing of the . . . factors de novo." *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272 (alterations, internal quotation marks, and citation omitted). To evaluate a speedy trial claim, we balance and weigh several factors, which include "the length of delay, the cause of the delay, timely assertion of the right, and prejudice to the accused." *Id.* ¶ 1. We begin with the length of delay, considering first whether the length of the delay is sufficiently prejudicial to trigger the remainder of the analysis and next evaluating how to weigh the length of the delay "in the final speedy trial inquiry." *Id.* ¶ 20.

{5} We calculate the length of delay in the present case from the date of arrest, April 9, 2019.[2] *See State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061. Between April 9, 2019, and the date of trial, August 20, 2020, sixteen months

---

[1]Although Defendant cites both the state and federal constitutions, we limit our analysis to the United States Constitution because Defendant makes no separate argument that the New Mexico Constitution requires different or greater protections.

[2]To the extent Defendant suggests that the period between the execution of the warrant on January 14, 2019, and the arrest on April 9, 2019, should be included and weighed in our length of delay analysis, we decline to consider this period because our review of the record reveals neither intentional nor tactical preprosecution delay by the State nor corresponding prejudice to Defendant. *See Gonzales v. State*, 1991-NMSC-015, ¶¶ 1, 10, 111 N.M. 363, 805 P.2d 630 (articulating the relevant test for "preaccusation delay" as "if [the] defendant makes a prima facie showing of prejudice and that the state knew or should have known delay was working a tactical disadvantage on [the] defendant, then the burden of production shifts to the prosecution to articulate a legitimate reason for the delay").

and eleven days elapsed. The district court found—and the parties agree—both that this was a simple case and that the time between Defendant's arrest and trial exceeded the twelve-month presumptively prejudicial period. *See Garza*, 2009-NMSC-038, ¶ 2. A four-and-a-half month delay beyond the presumptively prejudicial period does not weigh heavily in Defendant's favor, *see Spearman*, 2012-NMSC-023, ¶ 24, but because this period exceeded the "specified amount of time" for a simple case, we continue to evaluate the remaining three factors, *see id.* ¶ 20, beginning with the reasons for the delay.

**A.     The Reasons for Delay Weigh Slightly in Defendant's Favor**

{6}     The reasons for delay are "[c]losely related" to the length of delay and those reasons "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citations omitted). We consider and "weigh the reasons for delay in each . . . period[] separately." *State v. Maddox*, 2008-NMSC-062, ¶ 13, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48. The first four-month period between Defendant's arrest on April 9, 2019, and the date that the State's first opposed motion to continue was granted by the district court on August 8, 2019, weighs neutrally, because "the case proceeded with customary promptness." *See State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782. The next period of delay, caused by the State's second opposed motion to continue due to

4

delayed lab tests, was from August 8, 2019 to October 16, 2019. This two-month period weighs against the State, because Defendant opposed the first continuance sought by the State in August 2019. *See Spearman*, 2012-NMSC-023, ¶ 26 (weighing against the state continuances requested by the state). Defendant did not oppose the State's second request for a continuance in October, and so the next three-month period beginning on October 16, 2019, and ending on January 15, 2020, weighs neutrally.

{7}    On January 15, 2020, Defendant filed a notice of intent to plea but two days later moved to withdraw the plea, and Defendant's new counsel requested more time to "explore all aspects of representation." The district court vacated the January 22, 2020 trial setting and reset trial for March 11, 2020. On March 6, 2020, however, Defendant moved to continue the March 11, 2020 trial, in order to accommodate defense counsel's vacation plans. The district court quickly granted the motion and reset the trial for May 12, 2020. While the first month-and-a-half, the time between January 15, 2020 and March 6, 2020, weighs against Defendant based on the withdrawn plea, the period between March 6, 2020 and May 12, 2020, requires additional scrutiny because (1) our Supreme Court suspended criminal jury trials on March 17, 2020, due to the COVID-19 pandemic; and (2) Defendant contends that he did not consent to the continuance that defense counsel obtained on March 6,

5

2020. We first consider the suspension of jury trials due to the onset of the COVID-19 pandemic.

{8} On March 17, 2020, our Supreme Court entered an order[3] stating that

> all criminal jury trials arising under the Rules of Criminal Procedure for the District, Metropolitan, and Magistrate Courts that have not yet commenced shall be suspended until April 30, 2020, *subject to* the individual discretion of the judges presiding in such cases to go forward with a jury trial, upon motion of a party, to avoid serious harm to the interests of the litigants or for other exceptional circumstances.

(Emphasis added.) The March 2020 Order continued and provided for other circumstances in which a district court could proceed with trial absent a motion by the parties. *See* March 2020 Order at 3. The suspension of criminal jury trials continued until, on May 28, 2020, when our Supreme Court ordered[4] that criminal jury trials could "recommence between June 15, 2020, and July 15, 2020," subject to the approval of plans for safe resumption.

{9} The State maintains that the time during which criminal jury trials were suspended should weigh neutrally, because the delay was caused by the COVID-19

---

[3]Order, *In re Precautionary Measures for Court Operations*, No. 20-8500-002 (N.M. Mar. 23, 2020) at 3, https://www.nmcourts.gov/wp-content/uploads/2020/12/Order-No_-20-8500-002-Precautionary-Measures-for-NM-Court-Operations-During-COVID-19-Public-Health-Emergency-3-17-20-1.pdf (March 2020 Order).

[4] Order, *In the Matter of Recommencing Jury Trials During the COVID-19 Public Health Emergency*, No. 20-8500-020 (N.M. May 28, 2020) at 1-2, https://www.nmcourts.gov/wp-content/uploads/2020/12/Order-No_-20-8500-020-Order-Recommencing-Jury-Trials-5-28-20-2.pdf.

pandemic. Defendant suggests that the time should weigh against the State, "especially when the State consistently opposed release of a defendant charged with non-violent possessory offenses." Speedy trial analysis, however, under *Barker v. Wingo*, 407 U.S. 514, 520 (1972), "'necessarily compels courts to approach speedy trial cases on an ad hoc basis.'" *Moreno*, 2010-NMCA-044, ¶ 6 (quoting *Garza*, 2009-NMSC-038, ¶ 13). As a result, we decline to categorically assign to either party the weight of delay caused by the suspension of criminal jury trials due to the COVID-19 pandemic. Instead, we consider the circumstances of the particular case, because the right to speedy trial does not lend itself to "inflexible, bright-line approaches." *Garza*, 2009-NMSC-038, ¶ 13.

{10}    The need to consider the circumstances of every case becomes apparent in the present case, because the delay of the March 11, 2020, trial setting resulted from defense counsel's request to reset the trial date, which the district court accommodated by moving the trial to May 12, 2020. Pandemic notwithstanding, Defendant's trial would not have proceeded before May 12, 2020. Generally, "delay initiated by defense counsel . . . weighs against the defendant." *State v. Ochoa*, 2017-NMSC-031, ¶ 18, 406 P.3d 505. Defendant, however, maintains that he did not consent to the request for continuance to accommodate defense counsel's personal plans. Our Supreme Court has determined that in "an extreme case where the prejudice is palpable" it is "necessary to consider attorney neglect when analyzing

whether the right to a speedy trial was violated." *State v. Castro*, 2017-NMSC-027, ¶ 14, 402 P.3d 688. Defendant cites *State v. Serros*, 2016-NMSC-008, ¶ 42, 366 P.3d 1121, and asserts that "[d]elays sought by defense counsel without the defendant's knowledge or consent and which do not benefit . . . the defendant should not be weighed against the defendant." Defendant's argument disregards the narrow holding and unusual circumstances in *Serros* and fails to apply the test established by the *Serros* Court.

{11}     In *Serros,* the defendant remained incarcerated in protective custody for four-and-a-half years, and the defendant argued that "the delays were caused by his attorneys' neglect." *Id.* ¶¶ 6, 23, 33. Our Supreme Court concluded that "when the delay is extraordinary and the defendant is detained while awaiting trial, . . . it may be appropriate to shift the focus to the [s]tate's efforts to bring the case to trial, at least when the record demonstrates that the defendant did not affirmatively cause or consent to the delay." *Id.* ¶ 38. In *Serros*, the district court found the defendant had credibly testified that he (1) told the defense attorneys he did not want to enter a plea and wanted to go to trial, (2) did not agree to any extensions, and (3) did not know about the continuances until after they were granted. *See id.* ¶ 45. The defendant filed two motions to substitute defense counsel, which on appeal, the *Serros* Court determined to be reasonable under the circumstances. *Id.* ¶¶ 44, 49, 56, 63, 66. Our Supreme Court held that none of the delay caused by the defendant's counsel—or

8

the defendant's attempts to replace counsel—weighed against the defendant, *id.*, because the defendant did not "personally cause[] or acquiesce[] to the delay in [the] case," *id.* ¶ 43. After concluding that the time did not weigh against the defendant, the *Serros* Court considered whether the time should weigh against the state. *Id.* ¶ 68. Although none of "the [s]tate's actions were deliberately aimed at delaying [the d]efendant's trial," the state enabled the defendant's counsel in seeking the delays and its policies regarding victim interviews delayed trial preparation. *Id.* ¶ 73. Considering the state's obligation to bring the defendant to trial and the extraordinary length of the state's negligent delay, the reasons for the delay factor weighed "heavily" against the state. *Id.* Ultimately, the *Serros* exception applies: (1) to periods of "extraordinary" delay; (2) after considering whether the defendant "is to blame for the delays . . . because he has personally caused or acquiesced to the delay" and whether it would be unfair to attribute the delay to the defendant; and (3) if the state has—negligently or otherwise—not "met its obligation to bring [the d]efendant's case to trial." *Id.* ¶¶ 42-43, 73.

{12}     Defendant does not establish extraordinary delay, unfairness, or that the State's actions or inactions justify responsibility for this period. *See Castro*, 2017-NMSC-027, ¶ 13; *Serros*, 2016-NMSC-008, ¶ 43. The two-and-a-half month delay caused by defense counsel's motion to continue cannot be viewed as sufficiently extraordinary to shift accountability for this period from Defendant to the State. *See*

*Serros*, 2016-NMSC-008, ¶ 73. Defense counsel acknowledged that he requested the continuance "on my own," but Defendant did not testify at the speedy-trial hearing, seek to remove defense counsel, or argue at any point that he would have preferred to go to trial at the March setting with a different attorney. *See id.* ¶ 74. Despite filing three pro se motions to dismiss for speedy trial violations after the district court granted the March 2020 continuance and asserting that he did not know about or consent to the prior continuances, Defendant's pro se motions primarily sought to shift the blame for the delays to the State—and not to defense counsel. After the grant of defense counsel's motion, the district court quickly provided a new setting for May 12, 2020. The record does not support a conclusion that during this period, the State and the district court did not safeguard Defendant's rights or enabled unacceptable delay. *See id.* ¶¶ 73-74. We therefore cannot conclude that the prejudice resulting from this two-month delay is so extreme as to recommend application of the *Serros* exception to the general rule that delay caused by defense counsel weighs against Defendant. *See Ochoa*, 2017-NMSC-031, ¶ 18. Because Defendant caused the delay between January 15, 2020 and March 6, 2020, and Defendant's counsel caused the delay between March 6, 2020 and May 12, 2020, we weigh this four-month period against Defendant.

{13}    The May 12, 2020 trial, however, was not to be. The suspension of criminal jury trials ultimately continued beyond May 12, 2020.[5] In April, the district court reset trial for June 2020, with a June 11, 2020 docket call. As a result, the next period of delay for this Court to weigh is between May 12, 2020 and June 11, 2020. While the delay was caused by the COVID-19 pandemic and "resulted from events beyond the control of the defense and the prosecution," *see Ochoa*, 2017-NMSC-031, ¶ 30, the March 2020 Order and subsequent orders gave the district court the discretion to "go forward with a jury trial, upon motion of a party, to avoid serious harm to the interests of the litigants or for other exceptional circumstances," *e.g.*, April 2020 Order at 2; March 2020 Order at 3. When the May 12, 2020 trial was vacated in April 2020, approximately twelve months had elapsed since Defendant's arrest, and the case was over the presumptively prejudicial period for a simple case. Defendant had filed two pro se motions for speedy trial in the four weeks leading up to the resetting. The district court reset the trial without a motion and the State took no action, even though, as we have alluded, the State bore the burden to bring Defendant to trial. *See Serros*, 2016-NMSC-008, ¶ 41. The balancing of the speedy trial factors

---

[5] *See* Order, *In the Matter of Updated Precautionary Measures for Court Operations in the New Mexico Judiciary During the COVID-19 Public Health Emergency*, No. 20-8500-013 (Apr. 16, 2020) at 2, https://www.nmcourts.gov/wp-content/uploads/2020/12/Order-No_-20-8500-013-Updating-and-Consolidating-Precautionary-Measures-for-Court-Operations-in-NM-Judiciary-4-16-20.pdf (April 2020 Order).

must be considered within the context of a particular case, *see Garza*, 2009-NMSC-038, ¶ 13, and in this case and under these circumstances, we conclude that the one-month period between May 12, 2020 and June 11, 2020, weighs slightly against the State for its inaction.

{14}	The final period of time to be weighed spanned the period between June 11, 2020 and August 20, 2020. At the June 11, 2020 docket call, Defendant was ready for trial but the State requested an additional continuance because a witness was unavailable due to a scheduled vacation. The district court granted the continuance and reset trial for July 14, 2020. At jury selection on July 13, 2020, however, the State explained that it had filed a motion to continue the previous Friday, because interoffice procedures had failed to alert the State that a different witness would be on vacation. The district court granted the continuance over Defendant's objection, and trial was reset for August 20, 2020. We observe that when the State was again unprepared for trial, the district court invited and granted a motion for release—though the time that Defendant was released was short. This entire delay resulted from the State's inability to proceed to trial without two witnesses. Although in some circumstances unavailable witnesses result in delay weighed neutrally, *see Barker*, 407 U.S. at 531, in the present case, as the State acknowledges, these continuances were the result of the State's negligence. This two-month period weighs against the State.

**{15}** In total, seven months weigh neutrally, five months weigh against the State, and four months weigh against Defendant. The parties bear similar responsibilities for the delay, and this factor therefore weighs only slightly against the State. *See State v. Samora*, 2016-NMSC-031, ¶ 18, 387 P.3d 230.

**B.     The Remaining Speedy Trial Factors Do Not Tip the Balance in Defendant's Favor**

**{16}** The third and fourth speedy trial factors involve the assertion of the right to speedy trial and the prejudice suffered as a result of the delay. *See id.* ¶ 9. Regarding the third factor, Defendant's assertion of the right to a speedy trial, we generally "assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. Consequently, "we accord weight to the 'frequency and force' of the defendant's objections to the delay." *Id.* (quoting *Barker*, 407 U.S. at 529). Defendant asserted the right to a speedy trial first on January 8, 2020, in a pro forma filing. As noted, Defendant then filed three pro se motions for a speedy trial in March, April, and May 2020. On May 13, 2020, defense counsel filed a motion to dismiss for speedy trial violations. Defendant raised the speedy trial issue again in response to the final two continuances that the State requested. While we acknowledge the multiple assertions of the right, we observe that they were largely concentrated between March and May 2020 and ultimately culminated in a single speedy trial motion filed by counsel within the sixteen-month period of delay. *Cf. State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 19, 37, 67, 327 P.3d

13

1129 (concluding that the defendant was "vociferous" in the assertion of the right by objecting to time extensions and making three speedy trial motions at broadly spaced intervals over the thirty-six month delay and that this factor weighed heavily in the defendant's favor). We therefore conclude that this factor weighs slightly in Defendant's favor.

{17} We consider the fourth factor, prejudice resulting from the delay, in the context of the interests that "the speedy trial right was designed to protect—that is, preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired." *State v. Deans*, 2019-NMCA-015, ¶ 23, 435 P.3d 1280 (internal quotation marks and citation omitted). A defendant must ordinarily "make a particularized showing of prejudice to demonstrate a violation of any of the three interests" the speedy trial right was designed to protect, but if "a defendant was continuously incarcerated for an extended period of time, it requires no speculation to determine that the defendant suffered some prejudice." *Id.* ¶¶ 23, 24 (internal quotation marks and citations omitted). Defendant's arguments relating to prejudice on appeal differ from those made in the district court. In the district court, Defendant limited the prejudice argument to the length of pretrial incarceration and that he had "suffered unduly because of the pandemic." The district court correspondingly found "Defendant has been prejudiced due to pretrial incarceration," although the speedy trial motion was

denied. On appeal, however, Defendant does not attempt to demonstrate prejudice solely by the length of pretrial incarceration, but instead takes a retrospective review of the record to identify prejudice in hindsight. Because Defendant does not rely on the district court's finding, neither do we, and instead we evaluate the prejudice argument Defendant has made on appeal and conclude Defendant has not made a showing of "particularized prejudice." *See id.* ¶ 24.

{18} Defendant contends that particularized prejudice resulted from (1) anxiety and safety issues in prison, (2) financial consequences arising from the continued pretrial incarceration, and (3) health issues caused by inadequate medical care in prison. To support the claim of prejudice, Defendant cites various record sources, including assertions made in one of the pro se motions for a speedy trial; a statement about the need for medical treatment made at the June 2019 hearing to reconsider pretrial detention; an exchange during an in-chambers conference at trial regarding the need for oral surgery to treat a different medical condition; and statements Defendant made at sentencing. Apart from the scheduled appointment for oral surgery, none of these allegations were supported by evidence, affidavit, or testimony. *See Ochoa*, 2017-NMSC-031, ¶ 61 (noting the lack of "affidavits, testimony, or documentation with respect to [the defendant's] specific circumstances of anxiety"). Related to the oral surgery, Defendant provided no evidence—other than an assertion at sentencing—that the need to have the oral surgery was caused by the delay or the

incarceration. Much of this asserted prejudice was brought to the district court's attention piecemeal, in contexts other than speedy trial, which suggests that Defendant did not at the time view these asserted prejudices as resulting from pretrial delay. *Cf. State v. Lujan*, 2003-NMCA-087, ¶ 25, 134 N.M. 24, 71 P.3d 1286 (considering only those prejudice arguments that were made to the district court). Without a connection between prejudice and delay, Defendant cannot demonstrate on this record that the asserted prejudice occurred as a result of pretrial incarceration or delay. *See State v. Laney*, 2003-NMCA-144, ¶ 25, 134 N.M. 648, 81 P.3d 591 ("To support a finding of prejudice, the evidence must show a nexus between the undue delay in the case and the prejudice claimed." (alteration, internal quotation marks, and citation omitted)).

{19}     Defendant's pretrial incarceration exceeded the presumptively prejudicial period by less than four months. Without some evidence of particularized prejudice and under the circumstances of this case, this period of pretrial incarceration was not unduly prejudicial. *See id.* ¶¶ 9, 11, 29 (regarding a period of pretrial incarceration that was two months beyond the presumptively prejudicial timeframe and framing the question as "whether the length of time was unacceptably long in that it became unduly prejudicial so as to factor into the analysis"); *cf. Moreno*, 2010-NMCA-044, ¶ 7 (emphasizing the length of pretrial incarceration even when the evidence supports some anxiety and other loss resulting from the delay).

16

{20} Balancing all four factors, we discern no undue prejudice under the circumstances resulting from Defendant's pretrial incarceration, and the remaining factors do not weigh heavily in Defendant's favor. As a result, we conclude that Defendant's speedy trial rights were not violated. *See Deans*, 2019-NMCA-015, ¶ 27 (concluding that although one factor weighed heavily in the defendant's favor and the remaining factors weighed slightly for the defendant, absent prejudice, the right to speedy trial was not violated).

## II.     The Trial Court Did Not Abuse Its Discretion in Denying the Motion for Mistrial

{21} Defendant next contends that the district court should have granted a mistrial based on Defendant's argument at trial that the State had not disclosed that Sergeant Riddle, the law enforcement officer who executed the search warrant, lived in close proximity to the residence where the warrant was executed and had seen Defendant coming and going from that residence. "We review the [district] court's denial of the motion for mistrial for abuse of discretion." *State v. Smith*, 2016-NMSC-007, ¶ 50, 367 P.3d 420. We are cognizant that "[t]he power to declare a mistrial should be exercised with the greatest caution [and a]n argument for mistrial must show that the error committed constituted legal error, and the error was so substantial as to require a new trial." *Id.* ¶ 69 (alteration, internal quotation marks, and citations omitted). The legal error Defendant asserts is a purported discovery violation—the failure to disclose that Sergeant Riddle lived near the residence. Specifically, Defendant

17

argues: (1) the State failed to disclose the information that Sergeant Riddle lived nearby; (2) what the State did disclose failed to satisfy the purposes of the discovery rules; and (3) the district court did not mitigate the impact of the late disclosure. The State responds that no discovery violation occurred and that Defendant failed to timely move for a mistrial by not raising the issue with the district court at the first opportunity.

{22} Reversal based on the admission of previously undisclosed evidence depends on "(1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the [district] court cured the failure to timely disclose the evidence." *Id.* ¶ 27 (internal quotation marks and citation omitted). Objections to the admission of evidence must be timely. *See State v. Neswood*, 2002-NMCA-081, ¶ 18, 132 N.M. 505, 51 P.3d 1159; *see also* Rule 11-103(A)(1) NMRA (stating a claim of error in the admission of evidence is, in part, preserved by "timely" objection). This Court generally declines to review evidentiary arguments that are not made at the earliest opportunity, *see Neswood*, 2002-NMCA-081, ¶ 18, and similarly, a motion for mistrial is "considered untimely unless it is made at the earliest opportunity," *State v. Hovey*, 1987-NMSC-080, ¶ 13, 106 N.M. 300, 742 P.2d 512. Defendant maintains that he had no way to know that the information had not been disclosed in discovery

until Sergeant Riddle testified on cross-examination, and that, therefore, the motion for a mistrial was timely. Defendant's argument for a mistrial is tied to the next issue on appeal—whether counsel was ineffective. We therefore provide some additional background to put both arguments in context.

{23}    During opening argument, the State informed the jury that Sergeant Riddle would testify that he lived near the address where the search warrant was executed and that he saw Defendant coming and going from the residence on multiple occasions. During a break after opening arguments and the State's first witness, Defendant attempted to change the plea and presented the parties' agreement as to sentencing. After the district court informed Defendant that any plea would be "guilty" and indicated it would not consider sentencing recommendations from the parties and would make no guarantees about the range of penalty based on background and criminal history, Defendant decided to continue with the trial. Defendant did not reveal at that time any contention that the State was required— and failed—to reveal in discovery that Sergeant Riddle lived nearby. Sergeant Riddle testified next and provided details about observing Defendant coming and going from the residence. On cross-examination, Defendant asked, "You're testifying today that you are a neighbor of my client," and after Sergeant Riddle responded affirmatively, Defendant continued and asked whether the State had ever disclosed that fact in writing. Sergeant Riddle testified, "I can't speculate as to what

19

the [district attorney]'s office wrote down, and I can't speculate as to what you would have written down if you'd done a pretrial interview, and I'd have to review the documents here, whether everything was done prior to this date, it would have been known to you that I was his neighbor."

{24} It was at this point that Defendant requested a mistrial based on the State's alleged failure to disclose that Sergeant Riddle lived nearby. At the bench, the parties informed the district court that after opening, they had discussed whether disclosure occurred and that the mid-trial plea negotiations arose from this discussion. The district court, after a recess, informed the parties that the State had disclosed the warrant affidavit, which revealed Sergeant Riddle's surveillance of the residence, and had disclosed that Sergeant Riddle would testify at trial. The district court concluded that this information put Defendant on notice that Sergeant Riddle would testify about observing Defendant coming and going from the residence and that had Defendant conducted a pretrial interview, the full scope of Sergeant Riddle's testimony would have been revealed. The district court concluded that the State breached no duty to Defendant and denied the mistrial. Based on this account, we reject Defendant's argument that he could not have raised the issue sooner. Defendant had the information he needed to raise the asserted discovery violation after opening or at the first break in the trial and did not.

{25} Nevertheless, we agree with the district court on the merits that the information disclosed pretrial was adequate to put Defendant on notice that Sergeant Riddle's testimony could undercut the defense. The witness list disclosed Sergeant Riddle, and the warrant affidavit disclosed that Sergeant Riddle had surveilled the residence. Defendant offers no authority to suggest that more is required for disclosure under these circumstances. *See* Rule 5-501(A)(5) NMRA (requiring disclosure of "the subject area" for which witnesses will testify and documents material to the preparation of the defense that are in the state's possession). We therefore conclude that the district court did not abuse its discretion in denying the motion for mistrial on this basis.

**III.    Defendant Did Not Establish a Prima Facie Case for Ineffective Assistance of Counsel**

{26} We last address Defendant's contention that counsel was ineffective for failing to question the State's expert about certain evidence and failing to conduct a pretrial interview of Sergeant Riddle. "To establish ineffective assistance of counsel, a defendant must show: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Miera*, 2018-NMCA-020, ¶ 30, 413 P.3d 491 (internal quotation marks and citation omitted). The "completeness of the record" determines "[w]hether we address a claim of ineffective assistance through direct appeal." *Id.*

21

{27}     In New Mexico, it is often repeated that habeas corpus proceedings are preferable to direct appeal for ineffective assistance of counsel claims because the district court record might not "adequately document the sort of evidence essential to a determination of [defense] counsel's effectiveness." *Id.* (internal quotation marks and citation omitted). When unusual circumstances exist, however, we may remand for an evidentiary hearing to determine counsel's effectiveness. *See Duncan v. Kerby*, 1993-NMSC-011, ¶ 4, 115 N.M. 344, 851 P.2d 466. Remand for an evidentiary hearing is "appropriate only in very limited situations, such as when the trial record establishes a prima facie case of ineffective assistance of counsel." *State v. Stenz*, 1990-NMCA-005, ¶ 12, 109 N.M. 536, 787 P.2d 455. The term "prima facie case" has not been defined in the ineffective assistance of counsel context, though this Court has previously—and summarily—rejected the common definition for the phrase that is used in civil cases. *See State v. Gomez*, 1991-NMCA-061, ¶ 12, 112 N.M. 313, 815 P.2d 166 (distinguishing cases defining a "prima facie" showing in the civil summary judgment context). What is clear, however, is that decisions made by defense counsel that can be construed as rational, plausible trial strategies or tactics are insufficient to establish a prima facie case. *See State v. Rojo*, 1999-NMSC-001, ¶ 62, 126 N.M. 438, 971 P.2d 829.

{28}     We further have few guideposts for distinguishing between circumstances appropriate for an evidentiary hearing on remand and those best reserved for habeas

22

corpus. Remand is appropriate when a prima facie case is made "but the state has not had an opportunity to present evidence to rebut that prima facie case," *Stenz*, 1990-NMCA-005, ¶ 12, and where the district court has not had an opportunity to rule on the issue, *see State v. Cordova*, 2014-NMCA-081, ¶ 7, 331 P.3d 980. We do not, however, remand for an evidentiary hearing where a defendant seeks remand "to develop a record he currently lacks in order to support a claim he has raised on direct appeal." *Gomez*, 1991-NMCA-061, ¶ 11. In more recent decades, remand has evolved from a device reserved for "unusual circumstances," *Duncan*, 1993-NMSC-011, ¶ 4, to a "frequently" used tool, *see State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494. At the same time, we remain keenly aware of our Supreme Court's expressed preference for habeas corpus proceedings to address ineffective assistance of counsel claims, *see State v. Bernal*, 2006-NMSC-050, ¶ 33, 140 N.M. 644, 146 P.3d 289, and this Court's endorsement of that view, *see, e.g.*, *Cordova*, 2014-NMCA-081, ¶ 13. The preference for habeas corpus juxtaposed with the somewhat vaguely defined standard for when to remand for an evidentiary hearing creates uncertainty—and perhaps uneven application of the principles. Bearing this tension in mind, we address Defendant's ineffective assistance of counsel arguments.

{29} We dispense with Defendant's argument that defense counsel was ineffective for failing to cross-examine the State's expert "on the ground of lack of sufficient

23

prejudice" and do not determine whether counsel's performance in relation to cross-examination was deficient. *State v. Brazeal*, 1990-NMCA-010, ¶ 24, 109 N.M. 752, 790 P.2d 1033 (internal quotation marks and citation omitted). "The 'prejudice' element of an ineffective assistance of counsel claim is not satisfied when the defendant proves that a particular act or omission by [defense] counsel was prejudicial to [the] defense." *State v. Morgan*, 2016-NMCA-089, ¶ 15, 382 P.3d 981. The defendant must instead "show a reasonable probability that but for the attorney's objectively unreasonable conduct, the result of the proceedings would have been different." *Id.* (internal quotation marks and citation omitted). Defense counsel asked two witnesses about a DNA test that was performed on a recovered weapon, but failed to lay a sufficient foundation for any evidence to be admitted. At sentencing, defense counsel informed the district court that he meant to ask the State's expert forensic scientist about the DNA test but forgot. Defendant argues that the DNA test would have "substantiated that the guns were not" Defendant's and either that Defendant was "not the sole resident of the home" or that the items in the residence belonged to others. Defendant, however provides no citation to the record to demonstrate what the DNA test would have shown to the jury. Further, the State's expert was listed as a witness to testify about the drug testing, and Defendant does not establish whether the State's expert had the knowledge to testify about the report. On this record, we cannot determine whether there is a reasonable probability that

24

cross-examination of the State's forensic expert about the DNA test would have made a difference to the outcome of the case and discerning no prejudice, we do not consider this claim further. *See id.* As we have explained, however, when the record does not establish a prima facie case of ineffective assistance of counsel, we reject the claim "without prejudice to [the d]efendant pursuing habeas corpus proceedings based on these arguments." *State v. Adamo*, 2018-NMCA-013, ¶ 48, 409 P.3d 1002.

**{30}** We turn then to Defendant's second argument. We are concerned that defense counsel did not interview Sergeant Riddle even though the entire defense strategy admittedly relied on the State's inability to prove that Defendant was connected to the residence and the search warrant affidavit showed that Sergeant Riddle conducted surveillance on the residence. Counsel has an obligation to investigate, and a prima facie case for ineffective assistance of counsel may arise if the record evidence contains the information that would have been discovered had an investigation occurred. *See Miera*, 2018-NMCA-020, ¶ 34. The record shows that with investigation, defense counsel would have discovered that the State had evidence connecting Defendant to the residence. Despite the available evidence, until the State's opening, defense counsel did not realize that one of the State's witnesses lived nearby and had watched Defendant coming and going from the residence. We can imagine no tactical or strategic reason for declining to interview Sergeant Riddle, the State offers none. For these reasons we conclude that under

these circumstances, Defendant has established a prima facie case that defense counsel's performance fell below that of a reasonably competent attorney. *See State v. Aragon*, 2009-NMCA-102, ¶¶ 12, 15, 147 N.M. 26, 216 P.3d 276 (concluding that the failure to conduct pretrial interviews of the state's experts combined with the failure to engage a consulting expert was without "strategic or tactical justification" when "expert testimony was the crux of th[e] case"). We therefore consider prejudice.

{31}     To establish prejudice arising from defense counsel's failure to investigate, Defendant must demonstrate that the result of the proceeding would have been different. *See State v. Herrera*, 2001-NMCA-073, ¶ 37, 131 N.M. 22, 33 P.3d 22 (determining that there was no prejudice because no evidence in the record established "that the outcome of the case would have been any different" had counsel investigated). Defendant argues that had defense counsel discovered the evidence sooner, counsel would have advised Defendant differently both at trial and regarding opportunities for plea agreements. Defendant does not explain how the trial strategy would have changed or what it would have been. We do not foreclose this line of argument on habeas corpus review, we simply consider it no further absent a record or argument to support it. For this reason, we focus on whether Defendant made a prima facie case that the plea strategy would have been different, which we understand to mean that counsel would have advised Defendant to accept a plea

agreement and not to go to trial. *See Cordova*, 2014-NMCA-081, ¶ 12 (considering the factors necessary for a defendant to establish a prima facie case "'after inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings led to a less favorable outcome.'" (alteration omitted) (quoting *Lafler v. Cooper*, 566 U.S. 156, 160 (2012)).

{32}     To establish prejudice under these circumstances,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Cordova*, 2014-NMCA-081, ¶ 12 (internal quotation marks and citation omitted). In the present case, Defendant does not cite *Cordova* and the record is lacking on all three points. Considering the last two factors first, the record does not reveal the terms of the January 2020 plea or permit analysis of whether the district court would have accepted the January plea. We can be certain, though, that the terms of the midtrial plea would not have been less severe than judgment—because the district court rejected the parties' sentencing agreement proposal and informed Defendant that a plea would simply be "a change of plea from not guilty to guilty and the sentencing would be at the discretion of the [district] court." Relating to the first factor, Defendant rejected the January 2020 plea and with all of the information at

27

trial, Defendant was ultimately unwilling to enter a plea on the district court's terms because he would be "giving up everything and it's a guilty deal." This is in line with Defendant's pre and posttrial assertions of innocence. The record does not currently support a conclusion that counsel's ineffectiveness "caused nonacceptance of a plea offer," which in turn led to a less favorable outcome. *Id.*

{33} To develop a sufficient record of prejudice, Defendant would need an evidentiary hearing. *See id.* ¶¶ 12-13; *see also Morgan*, 2016-NMCA-089, ¶¶ 15, 27 (requiring that to establish prejudice, the defendant must show "the result of the proceedings would have been different" and under the circumstances of that case, a change in the law "hardly implie[d] that [the d]efendant would have pleaded guilty" absent a plea agreement). As we have explained, under circumstances like these, habeas corpus is the appropriate avenue to develop such a record. *See Gomez*, 1991-NMCA-061, ¶¶ 10-11 (rejecting a defendant's request for remand because the defendant sought to develop a record that was lacking on direct appeal and reiterating that habeas corpus is the preferred remedy).

**CONCLUSION**

{34} We affirm the district court's speedy trial ruling and denial of the motion for mistrial, and conclude the record is insufficient to establish a prima facie case for ineffective assistance of counsel, but nothing in our determination prevents Defendant from pursing a habeas corpus proceeding.

28

{35}    **IT IS SO ORDERED.**

_____

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____

**SHAMMARA H. HENDERSON, Judge**

_____

**JANE B. YOHALEM, Judge**

29