This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40643**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**SHANTELLE CHAVEZ,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Melissa A. Kennelly, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Leland M. Churan, Assistant Attorney General
Albuquerque, NM

for Appellant

The Law Office of Ryan J. Villa
Richelle Anderson
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** The State appeals the district court's order granting Defendant Shantelle Chavez's motion to dismiss for violating her speedy trial rights. Unpersuaded, we affirm.

**DISCUSSION**

**{2}** To determine whether a speedy trial violation has occurred, we consider the four factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "We weigh these factors according to the unique circumstances of each case in light of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *Id.* (internal quotation marks and citation omitted). Even though the district court explicitly assigned a weight to just one of the four factors—weighing the length of the delay heavily against the State—this does not prevent us from reaching the merits of the State's appeal because "we review the weighing and the balancing of the *Barker* factors de novo." *State v. Collier*, 2013-NMSC-015, ¶ 39, 301 P.3d 370 (text only) (citation omitted). Further, we review factual findings for substantial evidence, *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81, affording them "substantial deference" and reversing them "only for clear error." *State v. Gurule*, ___-NMSC-___, ¶ 20, ___ P.3d ___ (S-1-SC-37879, Dec. 7, 2023) (text only) (citation omitted). We consider each factor in turn.

## I.      The Length of Delay Weighs Heavily for Defendant

**{3}** The first *Barker* factor functions "both [as] the threshold question in the speedy trial analysis and [as] a factor to be weighed with the other three *Barker* factors." *State v. Ochoa*, 2017-NMSC-031, ¶ 12, 406 P.3d 505. As the threshold question, the length of delay that triggers a speedy trial inquiry depends on the case's complexity: at least twelve months for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. *State v. Garza*, 2009-NMSC-038, ¶ 2, 146 N.M. 499, 212 P.3d 387. When weighing delay as a factor, "[a]s the delay lengthens, it weighs increasingly in favor of the accused." *Ochoa*, 2017-NMSC-031, ¶ 14.

**{4}** The district court found that the delay spanned twenty-five months and that the case was simple. On appeal, the State challenges both findings. We conclude that the delay was improperly calculated, but we are not persuaded that the district court erred as to the case's complexity. The court determined that the delay spanned from Defendant's arrest on June 25, 2020, to the hearing on her motion to dismiss held July 18, 2022. This was in error because speedy trial rights do not attach to a defendant facing felony charges—as is the situation here—until the State files an indictment or information against the accused. *See State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061. In this case, the State filed its criminal information on July 21, 2020, a month after Defendant's arrest, making the delay twenty-four months, not twenty-five. As to the case's complexity, the State argues that, because it planned to use scientific evidence, we "could find" this to be an intermediate case. This is an unavailing attack on the finding made by the district court. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318 (recognizing that, under substantial evidence review, we do not ask "whether the trial court could have reached a different conclusion"). The State has not rebutted the presumption that the district court was correct. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701.

**{5}** We therefore conclude that because the total length of delay was twenty-four months—twice the threshold length for a simple case—a speedy trial analysis is necessary, *see Garza*, 2009-NMSC-038, ¶ 2, and we weigh the twenty-four-month delay heavily against the State. *See State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (weighing a twenty-four-month delay in a simple case heavily against the state).

## II. The Reason for the Delay Weighs Slightly for Defendant

**{6}** Under the second *Barker* factor, we evaluate the reasons for each period of delay, determine if either party is responsible for it and, if so, assign weight to it. Delay caused by the defendant is generally weighed against the defendant. *See State v. Deans*, 2019-NMCA-015, ¶ 18, 435 P.3d 1280. Delay caused by the state falls into one of three categories: "(1) deliberate or intentional delay; (2) negligent or administrative delay; and (3) delay for which there is a valid reason," and each generally carries a different weight. *State v. Suskiewich*, 2016-NMCA-004, ¶ 9, 363 P.3d 1247 (text only) (citation omitted). Deliberate or intentional delay weighs heavily against the state. *Id.* Negligent or administrative delay weighs against the state, and "the weight increases with the delay's 'protractedness.'" *State v. Radler*, 2019-NMCA-052, ¶ 19, 448 P.3d 613 (quoting *Garza*, 2009-NMSC-038, ¶¶ 26, 30) And "a valid reason, such as a missing witness, . . . justif[ies] appropriate delay." *State v. Spearman*, 2012-NMSC-023, ¶ 25, 283 P.3d 272 (internal quotation marks and citation omitted).

**{7}** Here, the district court did not divide the delay into discernable periods, but on appeal the parties agree to three different intervals: July 21, 2020, to February 22, 2021; February 22, 2021, to May 2, 2022; and May 2, 2022, to July 18, 2022. In addition, the court found the entire delay was due to various factors that overburdened the court's docket. On appeal, the State argues that this finding is not supported by substantial evidence. We address each period in turn.

## A. July 21, 2020, to February 22, 2021 (Seven Months)

**{8}** The parties agree that the case proceeded normally for the first seven months. Both parties filed their witness lists early on; on September 1, 2020, the State requested a scheduling order and filed various routine discovery motions and notices; and on September 15, 2020, the court issued a scheduling order, setting trial for February 22, 2021.

**{9}** Given that we see nothing in the record that supports the finding that this period was delayed by the court's docket, we believe the case proceeded at an ordinary pace and assign it neutral weight. *See State v. Maddox*, 2008-NMSC-062, ¶ 27, 145 N.M 242, 195 P.3d 1254 (weighing a period neutrally where "the case moved toward trial with customary promptness"), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48.

## B. February 22, 2021, to May 2, 2022 (Fourteen-and-a-Half Months)

**{10}** The State did little to push the case forward during this period. Its only activity was to amend its notice of intent to call witnesses to include the name of a lab analyst. The district court rescheduled the trial eleven times sua sponte, providing no reason for any continuance.

**{11}** We defer to the court's finding that this period of delay was due to an overburdened docket. *See Gurule*, ___-NMSC-___, ¶ 20. The court pointed to a combination of causes. It found its docket was backlogged because, even though the suspension of jury trials during the COVID-19 pandemic did not delay this specific case, it had delayed high priority cases. In addition, "a spike in filings" from the district attorney's office combined with staff turnover at that office and a "dearth of case screening and management" created a trial docket that could not be "reasonably" managed. On appeal, the State argues that the delay was exclusively related to the COVID-19 pandemic. The State relies on language in several of the court's early continuances, which state that there may not be *a docket call* for the case "[d]ue to time limits and issues regarding COVID-19." It also cites various Supreme Court orders—not in the record—which either suspended jury trials (whose periods of suspension predate all of the scheduled trials in this case) or recognized that the pandemic generally caused a backlog of cases. None of these demonstrate that the delay was exclusively related to the COVID-19 pandemic. The State has not established that the district court erred, and we therefore presume that the court was correct. *See Corona*, 2014-NMCA-071, ¶ 26.

**{12}** We determine that this delay is administrative, and because it lasted a few months beyond the threshold period for a simple case, we weigh it slightly against the State. *See Garza*, 2009-NMSC-038, ¶¶ 29-30 (categorizing a "congested docket[]" as an administrative delay and weighing it slightly against the state because the delay was "only slightly beyond the threshold to trigger the speedy trial inquiry").

## C. May 2, 2022, to July 18, 2022 (Two-and-a-Half Months)

**{13}** Eventually, the trial was set for the end of May 2022 with a docket call on May 2, 2022. At the docket call, Defendant's counsel was not prepared for trial, so the court continued the case to late August. On May 30, 2022, Defendant's counsel moved to dismiss the case for speedy trial violations. The court heard the motion on July 18, 2022 and dismissed the case on August 2, 2022. We will not defer to the court's finding that this two-and-a-half-month period was caused by the court's overburdened docket because there is no evidence in the record to support its finding. *See Flores*, 2015-NMCA-081, ¶ 4.

**{14}** Instead, we attribute this period to Defendant because her counsel was unprepared for trial and thus initiated the subsequent delay. Generally, "delays caused by defense counsel are attributable to the defendant." *Deans*, 2019-NMCA-015, ¶ 18. There is a very limited exception in which we do not attribute the delay to the defendant if the "defendant suffers extreme prejudice and is effectively blameless in the delay." *Id.* Defendant urges us to apply this exception because the delay was "solely attributable to

negligence of" her counsel, who failed to communicate with her and the delay "in no way benefit[ted]" her. We decline to do so because this "narrow" exception applies only in situations similar to those in *Serros*, 2016-NMSC-008, the case in which our Supreme Court adopted the test. *See State v. Pate*, 2023-NMCA-088, ¶¶ 10-12, 538 P.3d 450. The facts of Defendant's case are not similar to the facts in *Serros*. The two-and-a-half-month delay here is not comparable to the four-and-a-half-year delay in *Serros*, 2016-NMSC-008, ¶¶ 6-7, and, unlike the defendant in *Serros*, Defendant was not in custody. We therefore apply the general rule and attribute defense counsel's actions to Defendant.

**D.      Weighing the Periods of Delay**

**{15}**    Of the twenty-four months of total delay in this case, seven weigh neutrally, fourteen and a half weigh slightly against the State, and two and a half weigh against Defendant. Because the period of delay attributable to the State outweighs the others, we conclude that overall this factor weighs slightly against the State.

**III.      Defendant's Assertion of Speedy Trial Rights Weighs Slightly for Defendant**

**{16}**    Under the third *Barker* factor, we analyze Defendant's assertions of her speedy trial right, assessing both "the timing of the . . . assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "[W]e accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *State v. Samora*, 2016-NMSC-031, ¶ 19, 387 P.3d 230 (alteration, internal quotation marks, and citation omitted).

**{17}**    Defendant adequately asserted her right by making two pro forma demands and by moving to dismiss for violations of her speedy trial rights. Although each pro forma demand is enough to assert the right, we assign Defendant's pro forma demands little weight. *See Ochoa*, 2017-NMSC-031, ¶ 41. We also believe Defendant's motion merits slight weight considering that the case was continued four weeks earlier because her counsel was unprepared for trial. *Cf. Deans*, 2019-NMCA-015, ¶ 22 (giving an assertion slight weight because it was "diluted" when weeks after the defendant's speedy trial assertion, he asked for additional time to consider a plea offer).

**{18}**    The State argues that this factor weighs against Defendant because her delay shows that she did not "truly want[] a speedy trial." We disagree. The State relies on *State v. Steinmetz*, in which the defendant's multiple speedy trial demands did not weigh in the defendant's favor because they "simultaneously operat[ed] in a dilatory manner" for a year and a half. 2014-NMCA-070, ¶ 61-62, 327 P.3d 1145. We think the facts of this case are distinguishable because Defendant operated in a dilatory manner for two-and-a-half months, unlike the year and a half of "gamesmanship" in *Steinmetz*. *See id.* ¶ 61-62. As such, the State has not carried its burden of establishing that the district court was incorrect. *Corona*, 2014-NMCA-071, ¶ 26. We therefore conclude that Defendant adequately asserted her right with her two pro forma demands and her

motion to dismiss, and that overall this factor weighs slightly in her favor. *See Ochoa*, 2017-NMSC-031, ¶ 41.

## IV.     The State Has Not Established That the District Court Erred by Finding Particularized Prejudice

**{19}**     The final *Barker* factor is the prejudice to the defendant caused by the delay, considering the three interests that the speedy trial right was designed to protect: "preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired." *Ochoa*, 2017-NMSC-031, ¶ 48. "The [d]efendant must make a particularized showing of prejudice to demonstrate a violation of any of the three interests." *Samora*, 2016-NMSC-031, ¶ 21. In this demonstration, because "some degree of oppression and anxiety is inherent for every defendant who is awaiting trial," a defendant must show that their "anxiety is undue." *State v. Parrish*, 2011-NMCA-033, ¶ 32, 149 N.M. 506, 252 P.3d 730.

**{20}**     Here, the district court found seven types of particularized prejudice based on Defendant's testimony: (1) Defendant's anxiety and post-traumatic stress disorder (PTSD) were exacerbated by the delay; (2) Defendant was unable to find "meaningful employment" and had to live with her parents because of the pending felony; (3) Defendant had to live close to Raton, New Mexico rather than in Denver, Colorado where she would be close to her daughter and would have had better job opportunities; (4) Defendant never met her second attorney and had no communication with him; (5) Defendant updated herself on the case by looking it up online on a weekly basis; (6) Defendant repeatedly showed up to the Raton courthouse for trial only for it to be rescheduled; and (7) Defendant put her life on hold waiting to resolve the case. Here, because we conclude the court did not err in its first finding regarding Defendant's anxiety and PTSD—a finding that suffices to establish particularized prejudice on its own, *see State v. Montoya*, 2015-NMCA-056, ¶¶ 31-32, 348 P.3d 1057—we need not address the arguments regarding the other six findings.

**{21}**     The State exclusively relies on *State v. Vigil-Giron*, 2014-NMCA-069, 327 P.3d 1129, to argue that because Defendant did not substantiate the degree to which the delay affected her anxiety or PTSD with testimony or medical records, she failed to show it was undue. Although it is true that the defendant in *Vigil-Giron* provided medical records to corroborate the testimony regarding their anxiety, we are not persuaded that the case created a requirement that a defendant must corroborate their testimony with medical evidence. *Id.* ¶ 54. On the contrary, precedent recognizes that a defendant may demonstrate particularized prejudice by presenting documentary evidence *or* testimony. *See Spearman,* 2012-NMSC-023, ¶ 39 ("[T]he claimed showing of prejudice came in the form of allegations of counsel, . . . [which] are not generally considered evidence. [The d]efendant should have offered some actual evidence in the form of affidavits, testimony, or documentation in support of the allegations."); *Taylor*, 2015-NMCA-012, ¶ 20 (concluding the defendant did not show particularized prejudice without providing "testimony or documentary evidence").

**{22}** In this case, the district court's finding was based on Defendant's testimony that she experienced undue anxiety and PTSD. Defendant testified that the charges she faced worsened her anxiety and PTSD "more than [she]'d like." She described her anxiety as "really bad" and explained that she struggled to find a job due to a combination of her anxiety, PTSD, and the pending charges. In addition, her anxiety and PTSD were unnecessarily prolonged by the fourteen-and-a-half-month delay attributed to the State because the court had an overloaded trial docket and the State made no effort to move the case toward trial. *See Montoya*, 2015-NMCA-056, ¶¶ 25, 32 (stating that the "presumption of prejudice intensifies the longer that the delay extends beyond the presumptive threshold" and concluding a fourteen-month delay attributed to the state in an intermediate case "unnecessarily prolonged" defendant's harm). District courts are "in the best position to assess the credibility of the witnesses and determine the severity of the hardships and anxiety suffered by [d]efendant[s]," *id.* ¶ 32, and here the district court accepted Defendant's testimony. We therefore defer to the district court. *See Gurule*, ___-NMSC-___, ¶ 20.

**{23}** Based on the arguments presented by the State and the evidence of prejudice in this case, we are not persuaded that the district court erred by concluding that Defendant showed particularized prejudice. We therefore weigh this factor slightly to moderately against the State. *See Montoya*, 2015-NMCA-056, ¶ 32.

## V. The Weighing of Factors Supports a Speedy Trial Violation

**{24}** Because all four of the *Barker* factors weigh in favor of Defendant, we agree with the district court's conclusion that Defendant was deprived of her right to a speedy trial. *See id.* ¶ 33 (finding a speedy trial violation because no factor weighed for the state); *Vigil-Giron*, 2014-NMCA-069, ¶ 69 (same); *see also State v. Moreno*, 2010-NMCA-044, ¶ 38, 148 N.M. 253, 233 P.3d 782 (finding a speedy trial violation when every factor weighed for the defendant even though none weighed heavily).

## CONCLUSION

**{25}** We affirm.

**{26} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**